## ROBISON v. KELLY et al.

No. 4479. Decided Feb. 4, 1927. Rehearing Denied April 21, 1927.
(255 P. 430.)

*W. B. Higgins,* of Fillmore, and *Walton, Walton & Nelson,* of Salt Lake City, for appellant.

*Soule, Boyd & Spalding,* of Salt Lake City, for respondents.

STRAUP, J.

The plaintiff brought this action to recover from the defendant James A. Kelly, who was plaintiff's guardian, and from the other defendants, who were sureties on the guardian's bond, for waste and dissipation of plaintiff's estate. The case was tried to the court and a jury. At the close of plaintiff's evidence the defendants interposed a motion for nonsuit on the grounds: (1) That the complaint did not state a cause of action; (2) insufficiency of the evidence to support the material allegations of the complaint; and (3) of a former adjudication of which the court, without evidence, took judicial notice. The motion was granted and the action dismissed, from which the plaintiff prosecuted this appeal. He assigns as error (a) the granting of the motion; (b) rulings striking portions of the complaint on defendant's motion; (c) in excluding certain testimony offered by the plaintiff.

The substance of the complaint is that in March, 1920, the plaintiff, then a minor of the age of 19 years, was the owner of a farm of about 156 acres of choice lands in

Millard county; that the defendant James A. Kelly procured himself to be appointed guardian of the plaintiff's estate, took the oath of office, furnished a bond of $5,000, and had issued to him letters of guardianship; that he obtained an order from the court whereby he was authorized, as such guardian, to borrow from the Fillmore Commercial & Savings Bank the sum of $500 with interest, and give a chattel mortgage on crops to be grown on the lands, and by the terms of the mortgage the bank was made the agent of the guardian to take charge of the crops and apply the proceeds thereof to the payment of the note; that a crop of the value of about $500 was matured and harvested on a portion of the lands, but the guardian failed to account for the proceeds and squandered, wasted, and converted the same to his own use; that the guardian was a director and stockholder of the bank, and that his transactions for the plaintiff with and through the bank were inconsistent with plaintiff's interests and were in pursuance of a fraudulent scheme and plan to cheat the plaintiff out of his estate, to the profit of the guardian, and in obtaining the orders of the court and doing the acts in pursuance thereof he had not acted in good faith nor for the best interests of the plaintiff's estate, but, on the contrary, acted in bad faith and against plaintiff's interests and in breach of his duties as guardian and in violation of his trust and knowingly imposed upon the court and suppressed and did not disclose to the court the facts in the complaint alleged and which were within his knowledge, and that "such orders were and are mere cloaks to cover the said scheme and plan of said defendant James A. Kelly"; that, in pursuance of such scheme, the guardian obtained a further order from the court whereby he was authorized as such guardian to borrow from the bank the sum of $1,833.25 for one year, with interest at 8 per cent. per annum, for the purpose primarily of making a first payment upon certain water stock and to secure the same by first mortgage to the bank on plaintiff's lands, all of which the guardian did with knowledge

that the same was grossly improvident, and that there was and would be no income from the lands available to repay the loan; that there was no other income out of which to pay the note and mortgage, and the only way the obligation could be met was by foreclosure of the mortgage, and that the guardian knew that it was impossible for the plaintiff to redeem from a foreclosure sale; that the loan was not paid, the mortgage foreclosed, the lands sold, plaintiff's equity of redemption lost, plaintiff unable to redeem his lands, and thus by the transactions and proceedings the whole of his estate was wasted and lost; that a canal company proposed to extend its canal and required subscriptions for its stock to do so, and that it was to the interest of the plaintiff to have the canal extended, and that he believed it was necessary for him to subscribe for 75 shares of the stock as such guardian in order that the extension might be made; that the plaintiff did not need so much water as was represented by such shares, but that 25 shares was all that was necessary, and that an artesian well could have been constructed for $1,000; that in pursuance of the scheme the guardian, to further his private interests, subscribed for 75 shares of water stock, at a total price of $6,000, and entered into a contract with the water company to purchase the stock, making a first payment thereon of approximately $1,800, the contract providing for the payment of the balance of the purchase price in 10 equal annual installments, with interest at the rate of 6 per cent. per annum and the pledging of the stock to secure the unpaid purchase price, and that the company, in default of the payment of any installment, was given the right to forfeit all moneys paid; that the guardian in so acting well knew that the contract was grossly improvident, and that only about 25 acres of the lands were in a state of cultivation, and that the rental value or net productive income from the lands did not exceed the sum of $700, and, while many shares of stock were subscribed for by other landowners owning similar lands in the vicinity, yet in no such large

amounts proportionately either to their lands or to their resources as to the stock subscription contract in respect of plaintiff's lands; that there was no income from the lands available to comply with the contract, and that the plaintiff had no other means, and that the obligation could not be met or paid out of plaintiff's estate, and that the only way in which the obligation could be met was by foreclosure of the pledge and a forfeiture of the initial payment, and that when the next payment fell due the guardian had nothing of the plaintiff's estate with which to meet the payment nor any of the subsequent payments, and that the water company forfeited all moneys paid on the stock; that in making the contract for the purchase of the stock the bank acted as agent for the water company and received a portion of the initial payment as a commission for its services in that behalf, and that the guardian contrived and intended to and did actually receive the benefit thereof as a stockholder of the bank; that by such acts the guardian defrauded and cheated the plaintiff out of his property "and, under the colorable supervision of the court," and under the direct supervision of the guardian, within less than one year's management the whole of the estate was squandered and wasted, in breach of the bond and in violation of the conditions thereof, to plaintiff's damage in the sum of $5,500, for which judgment was prayed.

We think the complaint stated a cause of action. We do not understand, however, that the motion was granted on that ground. The guardian, as such, upon orders of the court, obtained two loans from the bank, one for $1,833.25, and to secure the payment thereof the guardian, under authority of the court, gave a mortgage on plaintiff's lands, and with $1,500 of that loan paid the first payment on the purchase price of 75 shares of water stock at $80 a share. The other loan was for $500, the payment of which was secured by a mortgage on the crops to be grown on the lands for the year 1920. The first mortgage was foreclosed by the bank, and the lands sold to the

bank on foreclosure sale for nonpayment of the debt secured thereby. The claim was made by the defendants that such foreclosure proceeding was a binding adjudication against the plaintiff as to the validity of the first mortgage and the good faith of the guardian in obtaining the loan and mortgaging the lands. However, neither the pleadings nor findings, nor any of the proceedings in such case, were put in evidence; nor was there any evidence otherwise given as to what was presented, litigated, or determined in such cause, nor even who the parties were, except a stipulation that there was a foreclosure of the mortgage, the lands sold on foreclosure and purchased by the bank, and that there was no redemption had. But the court, in passing on the motion for nonsuit, took judicial notice of such proceedings, made observations with respect thereto, and, in part at least, granted the motion on such ground. In that we think the court erred. While a court may take judicial notice of proceedings and records of a cause before it, for they actually and constructively are before the court, yet a court cannot in one case take judicial notice of its own records in another and a different case. In re Evans, 42 Utah, 282, 130 P. 217; 23 C. J. 112, 113.

The question of sufficiency of the evidence to support the material allegations of the complaint is more serious. The substance of the evidence is: In March, 1920, the plaintiff was 19 years of age. He was then the owner of about 156 acres of land in Millard county. The lands had no water right. Without water, they could not be successfully or profitably farmed. With water, hay, grain, sugar beets and other crops could successfully be raised. About 90 acres of the farm had more or less been cultivated and on which some crops had been raised, principally from a permissive use of water from what is known as ■ Chalk creek, but the evidence with respect to that is very meager. At any rate, it is clearly established by the evidence that the land had no water right and without water crops could not successfully or profitably be produced.

James A. Kelly, not at his own instance but at the request of the plaintiff and his parents, in March, 1920, was appointed guardian of plaintiff's estate and qualified and acted as such. The plaintiff had no estate other than the 156 acres of land and had no other source of income. On the same day that he was appointed and qualified, the guardian presented and filed a written petition for an order of the court authorizing and directing him, as such guardian, to obtain a loan and mortgage the lands to secure the payment of the same. The petition, in substance, recited that the lands were arid and required irrigation for the production of crops and when irrigated produced agricultural crops of all kinds; that there was no water belonging to the lands for irrigation; that the lands were improved, and if a water right could be purchased for irrigation they would be rendered productive, and without water for irrigation nothing of value could be produced on them; that the Sevier River Land & Water Company was offering stock for sale in the Sevier River Canal Company, which represented water available for the irrigation of the lands; that the stock in such company could be purchased for the sum of $80 a share and at the same price and on the same terms that it was sold to others, and that each share represented 2 acre feet of water per annum, to be paid for in not to exceed 10 annual installments, the first payment to be not less than $20 a share and the balance at $6 2/3 a share in annual installments, with interest on deferred payments at the rate of 6 per cent. per annum; that to properly irrigate the lands required the purchase of 75 shares of such stock, and to make the purchase it was necessary to borrow $1,600 to apply on the first payment, and to obtain the loan it was necessary to mortgage the lands; that there was an inheritance tax of $233.25, which was a prior lien on the lands which had to be discharged in order to obtain the loan, and that to get the loan and discharge the lien it was necessary to borrow $1,833.25, and to secure the payment thereof to mortgage the lands; that there was no personal

property belonging to the estate and no funds with which to pay the tax, and for the reasons stated in the petition it was averred that it was for the best interests of the estate and of the plaintiff to make the loan for the purposes indicated, and thus the guardian prayed that he be authorized and directed by the court to obtain the loan and give the mortgage. The minor and his parents signed the petition with the guardian, and with him asked that the loan be made and the lands mortgaged as and for the purposes stated. At the same time the guardian filed another petition wherein it was represented that it was expected to acquire water stock to irrigate the plaintiff's lands; that the plaintiff had no animals or machinery available to farm the lands, and hence it was intended by the guardian to let the farm out to another, but to do so it was necessary for the plaintiff to furnish seed grain at an expense of about $500; that it was necessary to borrow that amount of money for such purpose, and to do so it was necessary to mortgage the crops for the year 1920 to secure the payment of such loan. That petition also was signed by the plaintiff and his parents. A hearing was had and evidence adduced with respect to such partitions. A transcript of that evidence, including the testimony of the guardian and of the father of the plaintiff, was put in evidence in this cause. Such evidence is sufficient to support the material allegations of the petitions. Upon such petitions and evidence, the court authorized and directed the guardian to obtain the loans and give the mortgages as prayed. In accordance therewith, he obtained both loans from the bank, one for $1,833.25 and to secure the payment of it gave a mortgage on plaintiff's lands, and another in the sum of $500 and to secure the payment of that gave a mortgage on the crops. The guardian thereupon entered into a contract with the water company to purchase 75 shares of water stock at $80 a share and with moneys obtained on the first loan paid $1,500, or $20 a share, as the first payment on the purchase price, and entered into a contract to

pay the balance at the rate of $6 2/3 a share annually, with interest on deferred payments. The shares were issued, but were assigned by the guardian to the bank which held them as security for the unpaid balance due on the stock. The inheritance tax was not paid because, as testified to by the guardian, the court advised him that he was not required to pay it.

In March, 1921, the guardian filed an account of his doings in the guardianship and at the same time tendered his resignation as guardian. Exceptions were filed to the account by the plaintiff and his parents. In June and July, 1921, amended accounts were filed by the guardian. Exceptions also were filed to these. These matters were continued, or, at least, no final action was taken on them, until in February, 1925, when the final account of the guardian was allowed and approved by the court and the guardian discharged. The plaintiff then was about 24 years of age. In this account the guardian charged himself with the loans of $1,833.25 and $500, farm products of about $364, and with other smaller items of receipts, amounting in the aggregate to $2,699.45. He credited himself with the payment of $1,500 to the water company on the first payment on the water stock, $315 for seed grains, etc., $137.25 interest paid to the bank, $56.25 water assessments, $65 state and county taxes, proceeds from crops amounting to $127, and other smaller items, making a total disbursement of $2,619.85 and had on hand a cash balance of $79.60. So far as made to appear, all moneys received by the guardian were properly accounted for. The court in such proceeding so found and determined. In these reports it was set forth that the guardian, in pursuance of court orders, had borrowed $1,833.25 and $500 and given mortgages to secure the payment of them, as hereinbefore indicated, and that the lands had been leased to another for one-half of the crops, the guardian agreeing to furnish the seed. None of the exceptions filed to the guardian's report or account related to the borrowing of the money or to the giving of the

mortgages to secure the payment thereof, but all of the exceptions referred to other items contained in the guardian's report and account.

It is, in effect, stipulated that the moneys paid on the water stock contract were forfeited for nonpayment of the balance due on the contract; that the bank foreclosed the mortgage held by it on plaintiff's lands; that the lands, on foreclosure, were sold to and purchased by the bank, the lands unredeemed from such foreclosure sale; and that all of the lands of the plaintiff and all interest he had in and to the water stock were lost. The guardian, who was called as a witness for the plaintiff, testified that he was unable to meet the notes and mortgages held by the bank or to make any further payment on the water stock, because there was no sufficient income from the plaintiff's estate and no moneys or funds available with which to make such payment. The plaintiff and his parents testified that when the guardian applied to the court for authority to borrow money to purchase the water stock and to mortgage the lands to secure the payment thereof they objected, not to the court but to the guardian himself, to his buying as much as 75 shares of water stock, then stating to him, as they testified, that they told him that only one-half of such number of shares was all that was necessary to be acquired, that the income from the lands would not be sufficient to meet the obligation of 75 shares at $80 a share, and that they would not be able to meet and pay the obligations as they matured, but that the guardian stated that 75 shares of water could well be used on the lands, that when plaintiff arrived at age the obligations from the derived incomes would be fully paid, and that the guardian was under bond and would not "do anything out of the road with" them. But they did not testify that any such objections were made known to the court when the petition was filed or heard asking the loan to be made with which to make the first payment on the purchase of 75 shares of water stock at $80 a share and mortgaging the lands to secure its pay-

ment, and, to the contrary, admitted that they signed the petition asking for the loan and the giving of the mortgage in the petition set forth.

To what extent water represented by the water stock, if any, was applied and used on the lands is not made to appear. It, however, is shown that 2 acre feet per acre annually was not an excessive nor an unreasonable amount of water with which to irrigate the lands, and that 75 shares would irrigate only about 75 acres of land. The amount contracted by the guardian to pay for the stock was what others were paying for water from the same source, but there was testimony that later on others bought water from the company for much less, some of it for only $21 to $26 a share. But the conditions and circumstances under which such stock was purchased were not disclosed.

We have thus given what we believe to be the substance of the evidence relating to the question in hand and before the court when the motion for nonsuit was interposed and granted. It may be conceded that the purchase of the water stock and mortgaging plaintiff's lands to make the first payment turned out to be unfortunate, and, under all the circumstances and conditions of plaintiff's estate, were unwise. However, there is no evidence to show that the price agreed to be paid for the stock was unreasonable or was more than others then were paying for such stock; and it fairly was made to appear that there was no other source from which water to irrigate plaintiff's lands could be obtained. The lands were suitable only for agricultural purposes, and crops could not successfully be grown on the lands without water, and with water agricultural crops of all kinds could be successfully grown. No claim is made that 75 shares of water stock each share representing 2 acre feet per acre per annum was an unreasonable or excessive amount of water to be used on plaintiff's lands. The claim made in such respect is that the circumstances of plaintiff's estate did not warrant or justify the incurring of an obligation of $6,000 for water on future and deferred

payments, and that the guardian ought to have foreseen that incurring such an obligation was bound to confiscate plaintiff's estate because of the inability of the guardian and the plaintiff to meet such an obligation. The propriety of incurring it, under all the circumstances, may well be questioned, but we do not see any bad faith in the transaction nor anything more than error of judgment. The guardian, of course, was required to be faithful, vigilant, and competent in the management of plaintiff's estate, and was bound to exercise therein such diligence and prudence as reasonable men ordinarily employ in the conduct of their own affairs, and was liable for any loss which resulted from his failure to exercise such prudence and diligence. But he was not an insurer nor required to exercise a higher degree of prudence and diligence than that stated, and, if his conduct measured up to the standard, he is not responsible for losses which have occurred through errors of judgment. 28 C. J. 1129. The guardian here acted not only on his own judgment, but also on that of the plaintiff and his parents. While that would not protect him as to an unauthorized act or in an abuse of discretion or judgment or lack of diligence or prudence, still it is an element bearing on the good faith and honest judgment of the guardian. We do not find sufficient evidence in the record to support the allegations in the complaint that the guardian, in applying to the court for authority and direction to borrow the money and give the mortgages to secure the payment thereof as ordered and directed by the court, did not fairly lay before the court all of the material conditions and circumstances of plaintiff's estate and upon which the authority and direction were asked, or that the guardian suppressed or withheld anything which could or ought to have been brought to the attention of the court. He fairly represented to the court the condition of plaintiff's estate, that there was no water with which to irrigate the lands, that without irrigation they were unproductive and with irrigation were productive; fairly represented the amount of water that could

be had with which to irrigate the lands and the price and terms upon which such water could be secured, and that the only means to secure it were by obtaining the loans and giving the mortgages prayed for and ordered by the court. He may have represented too high the income expected from the lands or the rental value thereof by the use of water on them, but that in the nature of things was a matter of mere opinion or judgment. Nor do we find sufficient evidence in the record to support the allegations that the loans were obtained and the mortgages given for the gain or advantage of the guardian, or that he derived any benefit from the transaction. The most urged against the conduct of the guardian is that he, under all the circumstances, ought to have foreseen the inability of the plaintiff and of the guardian, acting for him, to meet the obligation incurred and the resulting loss and depletion of plaintiff's estate; but as to that the guardian had the judgment, direction, and authority of the court, not fraudulently or wrongfully obtained as alleged, but fairly obtained by laying before the court all the circumstances and conditions of plaintiff's estate, the terms and conditions upon which water could be acquired, and the only means available to acquire it. Nor do we find sufficient evidence in the record that the guardian entered upon a scheme or plan of any kind to cheat or defraud the plaintiff of his lands or his estate; nor that the guardian had converted or misappropriated or misused any of the moneys obtained by him, or any of the proceeds derived from the products of the lands, but, to the contrary, properly accounted for all of such moneys and proceeds. That was heard and the contrary determined by the court in the prior proceedings approving and allowing the final account.

It is claimed that in some particulars this case falls within the case of *Stockyards Nat. Bank* v. *Bragg* (Utah) 245 P. 966. We think not. There it appeared that the court was unauthorized to order the mortgage of the minor's property and that the mortgage ordered and directed was

primarily to secure the debt and obligation of others, especially of a failing if not of an insolvent foreign corporation and of the guardian himself. Here authorizing and ordering the mortgage to be given was within the power and discretion of the court. § 7838, C. L. 1917; *Fillmore Com. & Savings Bank* v.*Kelly*, 62 Utah, 514, 220 P. 1064. That the court had power to authorize the mortgages is not seriously questioned. The complaint does not proceed on the theory that the court had no such authority or power, but on the theory that the guardian fraudulently and for personal gain and advantage imposed on the court and by wrongfully withholding information induced it to authorize the mortgages. But, as before stated, we do not find sufficient evidence in the record to support such allegations.

On the defendants' motion, and over the objections of the plaintiff, the court struck from the complaint the allegations, or, rather, the phrase that "such orders (authorizing the guardian to borrow the moneys and give the mortgages to secure the payment thereof) were and are mere cloaks to cover the said scheme and plan of said defendant James A. Kelly," and the phrase, that "under the colorable supervision of the court" the guardian within less than a year's management squandered and wasted the whole of plaintiff's estate. The ruling is assigned as error. The court merely struck the language quoted and seemingly did so because such language was construed to be a reflection on the court. The language is not open to such construction. The court well could have overruled the motion, and, in view of and in connection with other allegations of the complaint and the theory upon which the complaint proceeded, the court ought to have overruled it. However, we think no prejudicial error was committed in the ruling. The language stricken is but a characterization deducible from other allegations of facts alleged in the complaint. It, however, on the record, is apparent that by striking such language the plaintiff was not precluded from offering evidence in support of the allegations that the

guardian had acted in bad faith, withheld from the court the true condition of plaintiff's estate, or had not fairly laid before the court all of the conditions and circumstances of the estate, or that the application for authority and direction to borrow the moneys and give the mortgages to secure the payment of them was but a scheme or plan to defraud or cheat the plaintiff, or for the use and benefit of the guardian, or was not to the best interests of the estate. We thus think the ruling, though error, was harmless.

It was made to appear that the bank, after the foreclosure sale and purchase by it of plaintiff's lands, and after the period of redemption had expired, sold the lands to another on contract. The plaintiff offered to prove at what price and upon what terms the bank had sold them. The court sustained the defendant's objections to such offer upon the ground that the evidence was immaterial. In view of the allegations in the complaint and the theory upon which it proceeded, that the guardian was a director and stockholder of the bank, that the transactions respecting the borrowing of the money and the giving of the mortgages were not for the best interests of plaintiff's estate, but for the use and benefit of the guardian and to cheat and defraud the plaintiff out of his estate, we think the proffered evidence was relevant. However, inasmuch as there is no sufficient evidence to support the allegations of the complaint that the guardian acted in bad faith, or to support the theory upon which the complaint is bottomed, we think the ruling was harmless. Though the plaintiff had been permitted to show that the bank sold the lands for a sum greater than the mortgage debt and costs, yet, in view of the record, such additional fact had it been made evident would not have justified the court in overruling the motion for nonsuit.

We therefore are of the opinion that the nonsuit upon the ground that the evidence was insufficient to support the material allegations of the complaint was properly

granted. The judgment of the court below is therefore affirmed, with costs.

THURMAN, C. J., CHERRY and HANSEN, JJ., and PARKER, District Judge, concur.

FRICK, J., absent on account of illness.