VAYDA v. DE WITT.

This case is controlled by *Overbeek* v. *Nex, ante,* 156.

Appeal from Ottawa; Miles (Fred T.), J. Submitted October 5, 1932. (Docket No. 18, Calendar No. 36,633.) Decided January 3, 1933.

Case by Frank Vayda against Stuart DeWitt and Cornelius Addison for malpractice in the treatment of a broken arm. Directed verdict for defendant DeWitt. Verdict and judgment for plaintiff against defendant Addison. Defendant Addison appeals. Reversed, without a new trial.

*Dean S. Face* and *Louis H. Grettenberger* (*William H. Messinger,* of counsel), for plaintiff.

*Douglas, Barbour, Desenberg & Shaefer* (*Clayton C. Purdy* and *Harold B. Desenberg,* of counsel), for defendant.

SHARPE, J. (*dissenting*). Plaintiff, a common laborer in the employ of Willetts Brothers in the erection of a bridge in the city of Grand Haven, on December 8, 1930, was struck by an appliance on the dredge then in use and thrown into the water. His left arm was fractured between the elbow and the wrist. The defendant Dr. Cornelius Addison was called, and had him at once taken to the Hatton hospital in that city. After administering an anæsthetic, he "placed splints on the arm, wooden splints at above and below the arm and bandaged

them on." Several hours later, the plaintiff was permitted to go to his home and was thereafter treated by the defendant, assisted at times by Dr. DeWitt. It clearly appears that there has been no proper union of the bones in the arm.

Claiming negligence and malpractice on the part of the defendants, plaintiff here seeks to recover the damages he has sustained incident thereto. The declaration was filed on November 27, 1931. A verdict was directed in favor of the defendant DeWitt, and plaintiff had verdict and judgment for $4,000 against the defendant Addison (hereafter called the defendant), of which he seeks review by appeal.

When the plaintiff was taken to the hospital, it became the duty of the defendant to diagnose his injuries, and in doing so to use—

"such diligence and methods of diagnosis for discovering the nature of the ailment as are usually approved and practiced by medical men of ordinary skill and learning in similar localities." *Rogers* v. *Kee* (syllabus), 171 Mich. 551.

It is undisputed that at that time there was an X-ray machine in the hospital. Plaintiff claims that defendant did not use it. A number of doctors were sworn as witnesses, and their testimony clearly raised an issue of fact to be submitted to the jury as to whether defendant's omission to do so was not negligent. Besides the fracture of both bones in the arm, it appeared that the radius was dislocated at the elbow joint, and this was not discovered until after the defendant had been discharged on January 31, 1931, and another surgeon substituted in his place. Although defendant testified that—

"At that time we took some X-ray pictures. First of all the fluoroscopical examination of the

whole arm, the fingers and the wrist, the forearm, the elbow, the upper arm, and even reached the shoulder with our fluoroscope.

"*Q.* And of what parts did you take an X-ray picture?

"*A.* Of the forearm, where the fluoroscope had shown us bone injury, between the wrist and the elbow. We took no X-ray of the elbow,"

there is medical testimony that this dislocation would have been discovered when examination was first made by the defendant had he used this machine. In our opinion there was competent testimony to show that defendant was guilty of malpractice, justifying its submission to the jury.

It is urged that claimed acts of malpractice, not supported by competent evidence, were submitted to the jury. A careful reading of the charge does not sustain this assertion. Taken as a whole, we think it fairly presented the issues of fact and the law pertaining thereto, and no claim is made that the verdict rendered is against the great weight of the evidence.

On cross-examination of the plaintiff, defendant's counsel sought to show that plaintiff had applied for, and had received, compensation for the injury sustained from his employer under the workmen's compensation act (2 Comp. Laws 1929, §§ 8407 *et seq.*). The trial court held this evidence inadmissible, but, at the request of the attorneys, permitted the witness to be examined relative thereto, but not in the presence of the jury, from which it appeared that he had made claim for, and had received, compensation under the act.

Counsel for the defendant insist that this evidence was admissible, and that plaintiff's receipt of compensation is a bar to this action, or, if not, should

have been received "for the purpose of mitigating damages." There is no practice in the trial of actions at law which permits the taking of such testimony, and we treat it as though an offer to so prove had been made and rejected.

Reliance is placed upon 2 Comp. Laws 1929, § 8454 (part 3, § 15, of the workmen's compensation act), reading as follows:

"Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages, or against the employer for compensation under this act, but not against both, and if compensation be paid under this act the employer may enforce for his benefit or for that of the insurance company carrying such risk, or the commissioner of insurance, as the case may be, the liability of such other person."

The purpose of this section is to relieve the employer from the obligation imposed upon him to compensate his employee for an injury sustained by him arising out of and in the scope of his employment. When such injury "was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof," the employee has the option to seek compensation under the act or to make claim for damages from the wrongdoer. He cannot proceed against both. He must make an election, and, if he elects to take compensation, his employer may enforce for his benefit, or that of the insurance company carrying his risk, the claim for damages against the wrongdoer. But, in doing so, he can but recover the amount of the compensation which he

has paid the employee. *Martin Parry Corp.* v. *Berner,* 259 Mich. 621.

An election is defined as—

"The obligation imposed upon a party to choose between two inconsistent or alternative rights or claims." Bouvier's Law Dictionary (Rawle's 1st Ed.), p. 646.

The employee may make claim for compensation on the eighth day after his injury. 2 Comp. Laws 1929, § 8419. At that time he may, and in most cases will, have no knowledge of the negligent act of the doctor which has so aggravated his injury that he may be totally disabled as a result thereof. It thus seems clear to us that in order for his election to bind an employee, and act as a defense to an action such as is here brought, he must at the time he made it have had the right to exercise the option provided for in the statute and that he did not have when the act of which he now complains was committed after the time when compensation might have been claimed.

As before stated, this section of the law was inserted in it to protect the employer who is required to compensate his employee for an injury although caused by another person. In our opinion it does not apply to the aggravation of an injury, as, in such a case, the employee has no option to proceed against the wrongdoer at the time he makes claim for compensation under the act. The right of subrogation provided for therein exists only where an election has been made.

In *Smith* v. *Battjes Fuel & Bldg. Material Co.,* 204 Mich. 9, it appeared that, after an agreement for compensation was entered into between plaintiff and defendant and the plaintiff had received payments thereunder, he brought an action against the

doctor, who had treated him, for malpractice, and obtained a settlement in the sum of $2,125. The State accident fund, which was carrying the risk of the employer, insisted that this sum should be credited upon the compensation to which he was entitled. The court said:

"The only question remaining is whether defendant State accident fund should have credit for the $2,125 received by the claimant from Dr. Wedgewood in reduction of the amount due from it to claimant under the terms of the statute. Our law makes no provision for the application of sums received by a claimant from a third party not connected with the original accident in reduction of the master's liability under the act. If such an application should be made it is a matter for legislative action rather than judicial interpretation."

In that case it appeared that the injury occurred in April, 1915, and the agreement for compensation was entered into on May 28th of that year, and that the employee did not become convinced that his arm had been rendered useless, due to the malpractice of the doctor, until January 29, 1916. This section of the act was held inapplicable. In the quotation above, the attention of the legislature was called to the injustice to the employer in the construction placed upon this section. This holding was referred to in *Wood* v. *Vroman,* 215 Mich. 449, 464, in the hope of the writer of that opinion that it might receive legislative consideration. In that case it was also said (p. 465):

"If the defendant was guilty of the tort complained of, he may not relieve himself from liability by showing that plaintiff had received compensation on account thereof from any other source, except through payment by a joint tort feasor."

It is urged that an employee may not receive more than one satisfaction for his injury. Under the act the compensation to which he is entitled is determined by the amount of the wage he was then receiving. The time for which it may be allowed is increased by aggravation of it, but a limit is fixed beyond which there shall be no payment. The nature of his injury or the results produced by the aggravation may not be considered except that it may increase the weekly allowance or lengthen the time for which the compensation shall be paid. It cannot, in our opinion, be well said that the compensation received under this provision of the act is in satisfaction of the injury sustained, due, as here, to malpractice. In such a case a plaintiff may recover for pain and suffering and for loss of earnings, not based upon a percentage of his weekly wage, due to total disability. The compensation to which an employee is entitled arises out of his contract of employment. It is—

"based on the economic principle of trade risk in that personal injury losses incident to industrial pursuits are, like wages and breakage of machinery, a part of the cost of production." *Mackin* v. *Detroit-Timkin Axle Co.,* 187 Mich. 8, 13.

It is not in the nature of damages for a tort, but an allowance to the employee for the time he is incapacitated from performing the labor in which he was engaged at the time of his injury. While to some extent the sum awarded may be included in the verdict rendered in the action at law, it is the employer, and not the wrongdoer, who should be entitled to make such a claim. Unfortunately, the law does not now make provision therefor, but of this the defendant in such a case may not complain.

By his negligent act he has caused injury to the plaintiff, and should respond in damages therefor.

Many authorities are cited and relied upon by counsel for both parties. In none of them where the statute contains a provision similar to section 8454 did decision rest upon the doctrine of election, as we think it should.

Plaintiff relies upon *Hoehn* v. *Schenck,* 221 App. Div. 371 (223 N. Y. Supp. 418) ; *White* v. *Matthews,* 221 App. Div. 551 (224 N. Y. Supp. 559) ; *Viita* v. *Fleming,* 132 Minn. 128 (155 N. W. 557, L. R. A. 1916 D, 664, Ann. Cas. 1917 E, 678) ; and the defendant on the late case of *Polucha* v. *Landes,* 60 N. D. 159 (233 N. W. 264), and cases there cited. It may be observed that in the *Polucha Case* the law in that State awarding compensation is—

"to the exclusion of every other remedy, * * * except as otherwise provided in this act; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the State over such causes are hereby abolished, except as in this act provided." (North Dakota Comp. Laws Supp. 1925, § 396a1.)

The law also provides for subrogation to the workmen's compensation fund, the insurer of the employer, and if it—

"shall recover from such other person damages in excess of the compensation already paid or awarded to be paid under this act, then any such excess shall be paid to the injured employee or his dependents less the expenses and costs of action." (North Dakota Comp. Laws Supp. 1925, § 396a20.)

An article appearing in 29 Michigan Law Review, p. 568, by Professor Paul A. Leidy, may be read with profit.

In our opinion the judgment should be affirmed.

McDONALD, C. J., and POTTER, J., concurred with SHARPE, J.

BUTZEL, J. For reasons stated in *Overbeek* v. *Nex, ante,* 156, the judgment is reversed, without new trial, and costs to defendant.

CLARK, NORTH, FEAD, and WIEST, JJ., concurred with BUTZEL, J.