## JOHANSON et ux. v. CUDAHY PACKING CO.

No. 6693. Decided October 5, 1944. (152 P. 2d 98.)

Rehearing denied December 13, 1944.

See 31 C. J. S. Evidence, Sec. 141. 108 A. L. R. 1286; 39 Am. Jur. 979.

*A. H. Hougaard, E. LeRoy Shields,* and *A. H. Nebeker,* all of Salt Lake City, for appellants.

*M. E. Wilson,* of Salt Lake City, for respondent.

WOLFE, Chief Justice.

Appeal from a judgment of dismissal entered upon the plaintiffs' failure to plead over after a demurrer was sustained to the complaint.

The plaintiffs, Carl and Clara Johanson, bring this action to recover for the alleged wrongful death of their son, Robert Johanson. Robert Johanson, at the time of his death, was employed by the Royal Crystal Salt Company. He was killed in the course of his employment when he backed a truck into some high tension electric wires while delivering a load of salt to the Cudahy Packing Company, the defendant herein. The plaintiffs applied for and were awarded industrial compensation for the death of said Robert Johanson

on the theory that they were dependent upon him for support at the time of his death. The complaint alleges that the London Guarantee & Accident Company, Ltd. carried industrial insurance on the employer of Robert Johanson and that under Section 42-1-58, R. S. Utah, 1933, said insurance carrier was subrogated to any right of action which the plaintiffs may have had against the Cudahy Packing Company.

The plaintiffs proceed on the theory that Cudahy Packing Company was negligent in various particulars (to be hereinafter considered in detail) and that this negligence was the proximate cause of the death of Robert Johanson. The plaintiffs base their right to bring this action upon the theory that the alleged waiver of the right of subrogation and the alleged assignment by the insurance carrier of its cause of action, vested in them any cause of action which said insurance carrier may have obtained against Cudahy Packing Company by virtue of Section 42-1-58.

At the time of Robert Johanson's death on June 3, 1938, Section 42-1-58 provided:

"When any injury for which compensation is payable under this title shall have been caused by the wrongful act of a third person, the injured employee, or in case of death his dependents, may at their option claim compensation under this title or have their action for damages against such third person; and, if compensation is claimed and awarded, the employer or insurance carrier having paid the compensation shall be subrogated to the rights of such employee or his dependents to recover against such third person; provided, if such recovery shall be in excess of the amount of the compensation awarded and paid, then such excess, less the reasonable expenses of the action, shall be paid to the employee or his dependents."

In support of its general demurrer and by way of cross-assignment of error, the defendant argues that after their election to take compensation, the plaintiffs were barred by Section 42-1-58 from bringing an action against the alleged third party wrongdoer, the defendant; that any cause of action that may have existed against the defendant vested in the insurance carrier for the employer; and that

the cause of action, being one for the wrongful death of Robert Johanson, was not assignable. This same point was raised on a former appeal of a suit brought by these plaintiffs against this defendant to recover for the wrongful death of said Robert Johanson. By a divided court it was held that the cause of action was assignable. See *Johanson* v. *Cudahy Packing Company,* 100 Utah 399, 115 P. 2d 794, on petition for rehearing 101 Utah 219, 120 P. 2d 281.

The lower court which had sustained a demurrer on the grounds that this cause of action was not assignable was reversed. We vacated the judgment of dismissal even though we held that the complaint was fatally defective in another particular. The lower court was instructed to permit an amendment—if the facts were such that an amendment could be made—to cure this said defect. We are told by counsel that when an amendment was filed the lower court held that it stated a new cause of action. Rather than question this ruling by appeal, the plaintiffs started over by commencing the instant suit. In view of the diversity of opinion expressed on the former appeal, the defendant has requested that we review the question whether the cause of action to which the insurance carrier was subrogated by Section 42-1-58 was assignable.

On the former appeal no line of reasoning received the approval of a majority of the court. Therefore, little could be gained from a detailed review of the various views therein expressed. We are now of the opinion that the cause of action is not assignable. We base that holding on the following reasoning. The cause of action is one for wrongful death. Such a cause of action did not exist at the common law. In this state as early as 1874 (see Compiled Laws of Utah, 1876, p. 397) the heirs of a deceased person were given the right to recover damages from any third person wrongfully causing his death. This right of action was guaranteed by Article XVI, Section 5 of the Utah Constitution.

On November 2, 1920, Article XVI, Sec. 5, of the Constitution was amended to permit enlarged workmen's compensation legislation. As amended it provided that "the right of action to recover damages for injuries resulting in death, shall never be abrogated * * * except in cases where compensation for injuries resulting in death is provided for by law." Pursuant to authority granted by this amendment the Legislature in 1921 (Laws of Utah 1921, Cap. 67, p. 175, § 3132) provided that the "right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee, whether resulting in death or otherwise, shall be the exclusive remedy against the *employer* * * *." (Italics added.) It will be noted that this provided only for actions for wrongful death against the *employer*. The remedy for death caused by "another not in the same employment" was covered by the next section (Laws of Utah 1921, Chapter 67, p. 176, Sec. 3133). By this latter section the cause of action for the death of an "employee" killed while in the course of his employment by a third person was given to his dependents if said employee were covered by the Workmen's Compensation Act. The dependents could not recover compensation under the Act unless and until they "assigned" their cause of action to the person or firm "liable" for such compensation. It was then provided that "such cause of action is by this section made assignable, whether it be for injury or death * * *."

Under the statute as it then existed, there can be little doubt concerning the fact that the cause of action which the said person or firm obtained was the cause of action for the wrongful death of the employee which right of action would, expect for this statute, have vested in the heirs of the deceased, and the one that did vest in the dependents subject to their right of election.[1] See *Salt Lake City* v. *Industrial Commission*, 81 Utah 213, 17 P. 2d 239, 242,

---

[1] In regards to there being a right of election between compensation and the statutory action for wrongful death against third person, see *Robinson* v. *Union Pacific Railroad Company*, 70 Utah 441, 261 P. 9.

wherein we specifically so held. The point raised was that the statute which made this cause of action assignable had the legal effect of creating a new cause of action, and that the one year statute of limitations applicable to causes of action "created by statute" was controlling. In overruling this contention we stated:

"The fact that a cause of action is made assignable by a statutory enactment does not make the cause so assigned a liability created by statute. The liability remained the same after the assignment was executed. The only effect of the assignment was to transfer to the assignee the right to maintain the action which right had theretofore been in the assignor."

In this 1921 statute it was expressely provided that "such cause of action is by this section made assignable, whether it be for injury or death * * *." There may be some question as to whether this provision made such causes of action assignable solely for the purpose of enabling the dependents to tranfer this cause of action to the person or firm liable for the compensation, and for no other purpose, or whether it was designed to make said causes of action generally assignable. The language used was broad in scope and contained no express limitations on general assignability.

We need not, however, be greatly concerned with the construction of this broad language for the language in the statute in effect at the time of the purported assignment by the insurance carrier in the instant case was considerably more restricted and materially different. ■ In place of the language that "such cause of action is by this section made assignable" the section in effect in 1938 when Robert Johanson was killed provided that "the employer or insurance carrier having paid the compensation shall be subrogated to the rights of such employee or his dependents to recover against such third person; provided, if such recovery shall be in excess of the amount of the compensation awarded and paid, then such excess, less the reasonable expenses of the action, shall be paid to the employee or his dependents." The portion providing that "Be-

fore being required to pay any compensation * * * the employer or insurance carrier may require the employee or in case of death his dependents to make a written assignment of any cause of action existing against the third person to such employer or insurance carrier as the case may be" was added subsequently. This restriction in the language regarding the assignment of this cause of action must be held to have been intentional. The person or firm paying the compensation award was by the statute "subrogated" to the cause of action against the third person; without more the right of subrogation could be followed. But the general clause making the cause of action assignable without limitation was omitted from the statute. The statute in effect at the time of Robert Johanson's death did not even use the word "assignment." There is no sound basis for holding that this language had the effect of making causes of action for the wrongful death of an employee against third persons generally assignable.

The previous holding of this court in *Salt Lake City* v. *Ind. Comm.*, supra, 81 Utah 213, 17 P. 2d 239, that the cause of action governed by Sec. 32-1-58 was the same cause of action which theretofore had been vested in the dependents of the deceased was not affected by this amendment of the statute. The cause of action is clearly one for wrongful death. In this state the sole test of assignability in the absence of statute is: whether the cause of action survives and passes to the personal representative of a decedent. If it would not survive it is not assignable. See *National Union Fire Insurance Co.* v. *D. & R. G. R. Co.*, 44 Utah 26, 137 P. 653. The cause of action against a third person for the wrongful death of an employee would not have survived his heirs. It would not have been assignable in the absence of a statute making it so. The statute, Section 42-1-58, did not make it assignable nor does any other statute have that effect.

This holding is not, however, fatal to the plaintiffs' case. The objection raised is that the plaintiffs are not the proper parties to bring this action. Our problem is therefore one of determining in whose name an action under Section 42-1-

58 must be brought. The general wrongful death statutes, Section 104-3-10, and 11, expressly state who shall bring the action. It should be noted that Section 42-1-58 contains no such express provision. Thus actions under Section 42-1-58 would be governed by Section 104-3-1 which provides that: "Every action must be prosecuted in the name of the real party in interest * * *." We here must decide whether under this section (104-3-1) an action for the wrongful death of an employee covered by workmen's compensation can be brought in the name of the deceased's dependents when the latter have elected to take compensation. For this purpose recourse must be had to the language of Section 42-1-58.

It may be noted that the section provides that if compensation is claimed and awarded, the person or firm "having paid compensation shall be subrogated to the rights of such employee or his dependents to recover against such third person." This language appears for the first time in Section 42-1-58, Revised Statutes, 1933. It amended the 1921 law which, as already noted, required the dependents to execute an "assignment" of their claim against the third party to the insurance carrier paying the compensation award.

It is our opinion that the language referring to "assignments" was intentionally deleted from the section and that the word "subrogated" was used advisedly. It was clearly never intended that the insurance carrier should be permitted to do more than idemnify itself to the extent of compensation and expenses paid. By the express wording of the section any excess recovered is to be paid to the injured employee or to his dependents as the case might be. The content of the word "subrogated" as used in insurance law is that the insurance carrier be substituted pro tanto so that it can idemnify itself to the extent of insurance paid. It is an equitable doctrine which will be applied only so far as is necessary to enable the carrier to indemnify itself. See *Beaver County* v. *Home Indemnity Co.,* 88 Utah 1, 52 P. 2d 435.

In *United States Fidelity & G. Co.* v. *New York Rys. Co.,* 93 Misc. 118, 156 N. Y. S. 615, 616, the court held that the use of the word "subrogation" in the title of a section carried into the text of the section the limitations of the equitable concept of subrogation. In that case the New York Workmen's Compensation Law, Sec. 29, Consol. Laws N. Y. c. 67, entitled "Subrogation to Remedies of Employe" was construed. The text provided that where compensation was claimed by the employee his cause of action "shall be assigned" to the insurance carrier paying the award. An insurance carrier, suing as assignee, tried to recover as damages the full amount which the employee could have recovered had he sued. The court held that the use of the word 'subrogation" in the title restricted the amount that could be recovered to the amount necessary to idemnify the insurance carrier.

It might be urged that the insurance carrier, under the literal wording of this section, was to be substituted to the full extent to all of the employee's rights against the third party; that any excess recovered should be then paid over to the employee. But to so hold attributes to the Legislature the doing of a useless act. If the section as it existed prior to the 1939 amendment, Laws of Utah, 1939, ch. 51, had the effect of carrying to the insurance carrier all of the employee's cause of action, then the 1939 amendment accomplished nothing. This amendment provided that "Before being required to pay any compensation * * * as provided in this title the * * * insurance carrier may require the employee or in case of death his dependents to make a written assignment of any cause of action existing against the third person * * *" to the insurance carrier. If by virtue of the language "shall be subrogated," etc. the insurance carrier already is substituted to all of the employee's right of action by operation of law, what possible reason could there have been for adding this amendment? We believe that this shows that the Legislature did not understand that the full right of action was vested in the insurance carrier without the amendment. We believe that by the use

of the word "subrogated" the Legislature intended to subrogate the insurance carrier to rights of the injured employee to the extent of the payment made by it by way of compensation; that the remainder of the cause of action stayed in the employee, or in case of his death, in his dependents; and that the usual rules governing parties in subrogation cases apply.

In *Harrington* v. *Central States Fire Ins. Co.,* 169 Okl. 255, 36 P. 2d 738, 740, 96 A. L. R. 859, the court construed a statute, Pub. Laws N. C. 1899, c. 54, § 43, providing that:

"If this company [paying insurance] shall claim that the fire was caused by the act or neglect of any person or corporation private or municipal, this company shall, on payment of the loss, be subrogated to the extent of such payment to all right of recovery by the insured for the loss resulting therefrom, and such right shall be assigned to this company by the insured on receiving such payment."

In regard to the correct party plaintiff, the court held:

"Where an insurance company pays to the assured a loss occasioned by the wrong of a third party, and the value of the property destroyed by the fire exceeds the amount paid by the insurance company, the assured may maintain an action in his own name against the wrongdoer and receive the full amount of the loss. In such case, the assured becomes trustee for the insurance company, and holds the amount paid for the use and benefits of such insurance company. (Citing cases.)

"The reason for the rule is that the wrongful act is single and indivisible, and gives rise to but one liability. If it were otherwise, if one insurer may sue, then if there were a number of each could do likewise, and if the aggregate of all the policies falls short of the actual loss the assured owner could sue for the balance, and the alleged wrongdoer would be compelled to defend a multitude of suits.

"Where the value of the property destroyed does not exceed the loss paid, this rule does not apply, because the assured owner would no longer have any interest in the cause of action, and while the suit may be brought in the name of the assured for the use and benefit of the insurer, such assured is not a necessary party, and a suit to recover such loss may be maintained by the insurer in its own name." (Citing cases.)

This case is extensively annotated in 96 A. L. R. 864. At page 879 under the subhead "Under Statute—b. Where Loss Exceeds Insurance Paid:" the following general rule is stated:

"Under statutes providing that every action must be prosecuted in the name of the real party in interest, some authorities maintain that if the insurance paid by an insurer covers only a portion of the loss, the right of action against the wrongdoer who caused the loss remains in the insured for the entire loss, and the action must be brought by him in his own name."

Cases from several jurisdictions are cited in support of this rule. These cases proceed upon the theory that the insured is the trustee for the insurer and that the third party has a right not to have the cause of action against him split up so that he is compelled to defend two or more actions. This splitting of the cause of action is avoided by having the suit brought in the name of the insured for the benefit of himself and as trustee for the insurance carrier. The principle of law is noted in *Nat'l Union Fire Ins. Co.* v. *D. & R. G. R. Co.*, supra, 44 Utah 26, 137 P. 653.

The authorities uniformly hold that such was the rule at the common law. In the annotation in 96 A. L. R. 864 at 865 the common law rule is stated as follows:

"Assuming that an insurer which has paid a loss to the insured is entitled to be subrogated to the rights of the latter against the person or persons whose wrongful act or omission caused the loss, it has been generally held that a suit at law to enforce such right of subrogation must, at common law, be brought in the name of the insured, rather than by the insurance company in its own name and right."

Numerous cases from twenty-four jurisidictions are cited. Of course, at the common law there was no right of subrogation in an insurance carrier against a third person for personal injury or death of an insured. See Sheldon, "The Law of Subrogation," 2d Ed., p. 357. But when this

right of subrogation was given by statute as it is in Section 42-1-58 and no special rules for maintaining the action are prescribed, the proceeding to enforce the rights gained by subrogation will be controlled by general principles of subrogation as affected by statutes governing pleading. Under Section 104-3-1 which specifies that actions must be brought in the name of the real party in interest, suit may be brought in the name of the injured employee or in case of his death in the name of his dependents, in those cases where the loss exceeds the insurance paid. There are cases holding that under statutes similar to Utah statutes relating to proper and necessary parties plaintiff both the insured and the insurance carrier must be joined. See cases collected **96** A. L. R. 884-889, and in particular the discussion of *Gaugler* v. *Chicago, M. & P. S. R. Co.*, D. C., 197 F. 79, wherein it is stated:

"Under the Montana statutes which provide that there is but one form of civil action; that every action, with certain exceptions, must be prosecuted in the name of the real party in interest; that all persons having an interest in the subject of the action and in obtaining the relief demanded may be joined as plaintiffs; and that those united in interest must be joined, save that any refusing may be made a defendant, if the loss is greater than the insurance on the property and there are several insurers which, by subrogation, are equitable assignees, proportionate to the payments by them made to the insured, of parts of the insured's right of action against the wrongdoer who caused the loss, the insured who, because of nonpayment of the loss in full, retains a portion of the right of action, and such insurance companies, not only are proper parties plaintiff, but must be joined as such * * *. In so holding the court among other things, said: 'There is but a single cause of action involved, viz., the right of the insured, the invasion thereof by the negligence of the defendant in the destruction of the insured's property, and the damages thereby inflicted. That the insurers as equitable assignees of the insured are interested therein to the extent of their payments to the insured, and are interested in proving the negligence and in sharing the damages, does not create other causes of action, legal or equitable, against defendants. It is still one cause of action, a single controversy, owned in common by the insured and the insurers. However, and wherever an action is brought to compel defendant to respond for its trespass, there can be but one action and in the right of the

insured, and one recovery for all those interested. * * * The plaintiffs herein, co-owners of the insured's right of action, were not only authorized by the state law to sue jointly as they did, but were compelled to do so. One compelled to join and joined in an action, and having a substantial interest therein, is not a nominal, but a necessary or indispensable party.' "

Other cases to the same effect are collected in the annotation.

In the instant case, the statute expressly provides that any excess which should be recovered above the amount of compensation paid shall go to the dependents of the deceased employee. Therefore said dependents have an interest in the subject matter of the action and are real parties in interest. When the insurance carrier declined to bring its action and executed a waiver thereof, the dependents were not compelled to forego suit. They have an interest in the recovery and can bring suit to enforce it. The only concern of the defendant third party is that he not be sued twice for the same wrong; that is, that the suit be brought in the name of the real party in interest and that all persons interested in the litigation be bound by any judgment entered therein. The failure on the part of the plaintiffs to make the insurance carrier a party plaintiff, or if it refused to join, make it a party defendant, is at the most a defect in parties plaintiff. Such a defect is waived unless raised. See *National Union Fire Insurance Co.* v. *D. & R. G. R. Co.,* supra, 44 Utah 26, 137 P. 653.

The special demurrer on the grounds that the plaintiff did not have the capcity to sue is not sufficient to raise this point. Want of legal capacity to sue as used in Section 104-8-1, U. C. A. 1943, means want of capacity to appear in court at all to maintain the action regardless of in whom the right of action is vested. *Hunt* v. *Monroe,* 32 Utah 428, 91 P. 269, 11 L. R. A., N. S., 249. When the want of such capacity does not appear on the face of the complaint, it is presumed that the plaintiff does have the capacity to sue. *Harrington* v. *Central States F. Ins. Co.,* supra, 169 Okl. 255, 36 P. 2d 738, 96 A. L. R. 859. Further, a demurrer

on the grounds that the plaintiffs have no capacity to sue is a special demurrer, and by virtue of Section 104-8-2, such demurrer must distinctly specify the grounds upon which it is based. Unless it does so it may be disregarded. The demurrer herein "That it appears from the face of the complaint that the plaintiffs have no legal capacity to sue or maintain this action" is not sufficiently specific.

For the reasons above stated we hold that the action was properly brought in the name of the plaintiffs, Carl and Clara Johanson.

The next point presented by the appeal, and the point upon which the decision of the lower court turned, involves a construction of Section 42-1-58. The respondent contends that the language of this section providing that "When any injury for which compensation is ▮▮▮ payable under this title shall have been caused by the wrongful act of a third person * * *" refers only to affirmative acts; that mere passive negligence is not covered thereby. In support of this contention the respondent refers to the general wrongful death statute, Section 104-3-11, U. C. A. and traces its history. It is noted that from 1874 when the first death statute was enacted in the Utah Territory the statute has contained the language covering deaths caused by the wrongful act or neglect of another. When in 1933 the Code Commission framed Section 42-1-58 and referred therein only to "wrongful acts" and failed to include the words "or neglect" the respondent contends it must be held that this omission was intentional; that it was designed to make Section 42-1-58 applicable only to affirmative acts—and that deaths or injuries caused by mere neglect or failure to act were not included therein. The next step in respondent's reasoning is that all injuries or deaths which were compensable under Title 42, U. C. A. 1943, were taken out of the general death statute, Section 104-3-11; that compensation from the employer is by Title 42 made the exclusive remedy for all wrongful deaths, except those caused by the *affirmative acts* of third persons; that the breach of duty for which the plaintiffs seek to hold

the defendant was *passive* negligence—the failure to warn deceased that the electric wires were in the path of his truck; and that there is, therefore, no action that can be maintained against the third party.

This argument is in error in two respects. First, such a construction would make the statute (Section 42-1-58) a shield for negligent third parties; would permit them to escape all liability for neglect resulting in injuries to persons covered by workmen's compensation. Such a result was never intended by the Legislature. Section 42-1-58 was never passed for the benefit of the negligent third person. It was not designed to place limitations on his liability. He was to be held liable as before. The section was designed to permit the person or firm paying compensation to participate in any recovery had from the negligent third party—the right of participation being limited to the amount of compensation paid together with costs of collecting from the third person. To let the third person go free under such a construction would defeat rather than further the obvious intent of the Legislature.

Secondly, the respondent is in error when it contends that all deaths for which compensation would be paid under the workmen's compensation act (Title 42) are necessarily excluded from the terms of Section 104-3-11. This latter section provides that "Except as provided in chapter 1 of Title 42, when the death of a person not a minor is caused by the wrongful act or neglect of another * * *" his heirs shall have a right of action. This section gives a cause of action for *all* wrongful deaths except those governed by Title 42.

Section 42-1-57 governs all actions for wrongful death against the *employer;* it does not purport to cover any other action against any other person. Section 42-1-58 is the only other section of Title 42 providing for actions for wrongful death. It purports to govern actions against third persons arising when said third persons or person has caused the death of an employee covered by workmen's compensation. If, as the respondent contends, this latter

section refers only to liability for *affirmative* acts, then there is no portion of Title 42 governing actions against negligent third parties for acts of omission or passive negligence. If these are not governed by Title 42 they are governed by Section 104-3-10 or 11 for the latter give a right of action for all wrongful deaths except those governed by Title 42. The cause of action against the negligent third person would be in the heirs—not in the dependents, and the dependents would be entitled to workmen's compensation. Since the palintiffs herein allege that they are heirs as well as dependents, they could maintain the action in their own names on this theory and would be entitled to keep all the money that might be recoverd. The allegations regarding the payment of workmen's compensation could be considered as surplusage. Aside from statutory limitations there is no principle of law which would prohibit the recovery of both compensation under the Compensation Act and damages from the negligent third person. The fact that the heirs and the dependents might be one and the same group is immaterial.

The very result reached by such a construction of the act demonstrates that such a construction is untenable. There is and can be no logical basis upon which it could be held that the heirs should have the right of action in event the death were caused by mere neglect, but that the right of action should vest in the dependents in event the death were caused by active negligence. Nor is there any reasonable basis upon which it could be provided that the insurance carrier paying compensation should be permitted to participate in any recovery from a third party when said person was acting affirmatively, but deny the insurance carrier any rights when the third person's negligence consisted solely of passive negligence.

We must not and will not by narrow judicial construction stymie the clear legislative intent. Not only would the construction contended for by the respondent not aid respondent in escaping liability, but it would destroy any logical fabric which the statute might have. To give any

effect to the legislative intent it must either be held that the term "wrongful act" as used in Section 42-1-58 was intended to cover both passive and active negligence or it must be held that the words "or neglect" were left out by inadvertence. It matters not which view is taken. In placing a contrary construction on this section the trial court was in error. And as already noted, even if the statute were construed to exclude wrongful deaths resulting from passive negligence of third parties, the complaint should not have been dismissed for if such actions are not governed by Section 42-1-58 they are caught up by Section 104-3-11. It appears from the complaint that the plaintiffs would have been the proper parties to bring such an action under said latter section.

The next point presented by the appeal is raised by the respondent's contention by way of cross-assignment that the complaint shows on its face that this claim is barred by the statute of limitations. This point was not expressly ruled upon by the trial court—the opinion going off on the grounds noted above. However, the position of the respondent in this regard appears to be well taken. The complaint alleges that the death of Robert Johanson occurred on the 3rd day of June, 1938. This action was not commenced until the 27th day of June, 1942. It is therefore barred by the provisions of subdivision 2 of Section 104-2-25, U. C. A. 1943. Section 104-8-1, U. C. A. 1943, which specifies the various grounds upon which a demurer may be filed does not expressly permit a demurrer on the grounds that it appears from the complaint that the action is barred by the statute of limitations. It is also difficult to see under which of the seven grounds specified in Section 104-8-1 a demurrer of this type could be filed, yet we have permitted the bar of the statute of limitations to be raised by demurrer. *O'Donnel* v. *Parker*, 48 Utah 578, 160 P. 1192. See comment in Bancroft, Code Pleading, Vol. 1, p. 351. The appellants contend that in view of the former action brought by plaintiffs the running of the statute of limitations was tolled by Section 104-2-41, which section

permits the plaintiff to commence a new action within one year after the former action (which involved the former appeal referred to above) failed otherwise than on its merits. But there is nothing on the face of this complaint to show that Section 104-2-41 has been brought into play. From all that appears from the complaint this is the first time that any action has been commenced to recover for the wrongful death of Robert Johanson. We cannot judicially notice proceedings and records of a case previously determined. *Robinson* v. *Kelly*, 69 Utah 376, 255 P. 430; *Spencer* v. *Industrial Commission*, 81 Utah 511, 20 P. 2d 618.

The respondent contends that the complaint herein fails to allege that the insurance carrier, the London Guarantee & Accident Company, Ltd., has paid the compensation awarded. The complaint alleges that pursuant to an order of the Industrial Commission said insurance carried paid the balance of the compensation awarded to the Johansons by payment to the Walker Bank & Trust Company as trustee for the benefit of the Johansons. The respondent contends that the allegation of payment to a trustee is not sufficient in that payment to a trustee is not authorized by the Act and that the Industrial Commission had no authority to order such a payment.

The opinion of Mr. Justice Pratt, in which it was reasoned that an allegation of payment is necessary, proceeded upon the theory that the statute (42-1-58) creates a new cause of action in favor of the insurance carrier. Under this theory it was reasoned that the cause of action did not come into existence until the award of compensation was paid in full. This reasoning that it was a new cause of action was not concurred in by a majority of the court and is contrary to the express holding of this court in *Salt Lake City* v. *Industrial Commission*, supra, 81 Utah 213, 17 P. 2d 239, wherein it was held that the cause of action which passed to the insurance carrier was the cause of action which would, but for the statute, have remained in its entirety in the dependents. Since we have concluded, supra, that the cause

of action to which the insurance carrier is subrogated upon payment of the compensation award is the same cause of action which, at the employee's death, vested in the dependents, we re-examine the question of the necessity of payment as a condition precedent to suit.

The cause of action for the wrongful death of Robert Johanson did not stand suspended in thin air until the plaintiffs made their election to take compensation. The cause vested in the plaintiffs at the time of Robert Johanson's death and the statute of limitations started to run at that time. The *election* of the plaintiffs to take compensation did not give the insurance carrier liable for compensation any interest in the cause of action. It obtained an interest in the cause only by making payments on the award. By payment it was subrogated to the rights to the extent of the payment made.

The dependents, once they have elected to take compensation and it has been awarded, need not wait until the compensation is paid in full before commencing suit. Suit could be commenced at once. The insurance carrier liable for the award would become interested in the suit upon the making of its first payment. From then on the question of the distribution of any money that might be recovered is no concern of the negligent third party. So long as the judgment entered in the suit against him (the third party) is binding both on the insurance carrier and on the dependents he cannot complain. Such protection can be gained by the requirement that the insurance carrier and the dependents all be made parties.

After all we must not lose sight of the fact that the statute was not enacted to form a shield for a negligent third person. The one and only interest of said third party is that the suit be brought in the names of those interested in it so that he will not later be made to defend a second suit for the same wrong. That protection is insured here by the fact that the defendant, by making timely objection, could have had the insurance carrier made a party.

To construe this section as requiring payment of the compensation award in full as a condition precedent to suit would in effect destroy the clear legislative intent. It clearly was never contemplated that the third party should escape liability by virtue of the operation of this section. To the contrary, the section contemplated recovery against a negligent third person and provided for the distribution of amount recovered. Yet if it were to be held that the compensation award had to be paid in full before any suit could be brought against the third person, he would be given an opportunity to escape all liability whenever the Commision deemed it advisable to have the compensation paid in periodic installments. Under the Act these periodic installments can run for six years, and in the case of permanent total disability for the lifetime of the injured employee. By the time the last payment was made, the statute of limitations would run on the claim. Thus in no case where the Commission ordered periodic payments could the third party be held. It is not thought that the legislature intended to have the running of the statute of limitations begin only at the end of the six year period or after the death of person totally disabled, for such would impose a different liability on the third party depending upon (1) whether the person injured was covered by workmen's compensation or not and (2) whether the injured employee or his dependents elected to take compensation or not. Under such a construction if the injured person were not covered by compensation or, if covered he elected to refuse compensation the statute of limitations would be four years from the time of the injury; but if he were covered by compensation and elected to take compensation, the statute would not even begin to run for at least six years and in cases of permanent total disability it might be fifty years or more. It is not thought that the legislature intended such a result. By so holding we are cognizant of the fact that we are not following the literal wording of the statute, but such is not required when to do so would defeat legislative intent and make the statute absurd. In this regard

see *Robinson* v. *Union Pacific R. Co.*, 70 Utah 441, 261 P. 9; *Brackett* v. *Chamberlain*, 115 Me. 335, 98 A. 933; *Nichols* v. *Logan*, 184 Ky. 711, 213 S. W. 181. We must hold that payment in full is not a condition precedent to suit. The amount of payment made and time of payment is no concern of the third party except insofar as necessary to protect him against another suit for the same wrong.

By way of further cross-assignment, the defendant contends that the complaint fails to allege facts to show any breach of duty on the part of the defendant toward the deceased. In this regard it may be noted that the complaint purports to allege two specific acts of negligence. First, it alleges the defendant stretched a series of three wires across an alleyway, that these wires carried a high and dangerous voltage of electricity and that the defendant had allowed the wires to become out of repair and to sag down into said alley to such an extent as to make it impossible to operate the truck which deceased was driving without coming in contact with the wires. Secondly, it is alleged that though the defendant knew of the existence of these wires, it failed to warn the deceased of their presence or of the high voltage of electricity carried by them. The defendant contends that the only duty owed by it to the deceased was the duty either to keep the premises safe or in the alternative to warn the deceased of *concealed defects*. That in order to show a breach of this duty the plaintiffs must show that the wires were *concealed* and that the complaint fails to so allege.

The complaint alleges that the deceased was delivering a load of salt which the defendant had ordered from the deceased's employer. Drivers delivering goods purchased by the occupier of premises are invitees. *Johnson* v. *Glasier*, 40 S. D. 13, 166 N. W. 154; *McCullen* v. *Fishell Bro. Amusement Co.*, 198 Mo. App. 130, 199 S. W. 439; *Murphy* v. *Avery Chemical Co.*, 240 Mass. 150, 133 N. E. 92. The best statement of the liability of the occupier of premises toward an invitee which has come to

our attention may be found in Bohlen, "Studies in the Law of Torts," p. 183. The rule is there stated as follows:

"The position of the 'business guest' is somewhat better than that of the 'bare licensee.' While the owner is bound to disclose to both any defect of which he knows and which he should recognize as creating a risk of injury to either, he may assume that the bare licensee, knowing that the owner has no interest in his visit and, therefore, cannot be expected to have made special preparations for his coming, will be on the alert to discover for himself the true condition of the premises; while a business guest, being entitled to expect to find the premises put in order for his visit, is not to be expected to discover defects unusual in a properly prepared business premises. And the owner having an interest in the 'business invitee's' visit, must by inspection ascertain the actual condition of the premises, so that ignorance due to a failure in inspection will not excuse his failure to give warning, while he owes no such duty to a bare licensee, it being immaterial that it would cost the owner a very slight effort to make an effective inspection and that it would be impossible for the licensee to make such an inspection in the course of his very temporary use of the premises."

Here the defective portion of the premises consisted of the very approach which was prepared by the defendant for the deceased's use. The deceased, as an invitee, had the right to expect to find the premises in a reasonably safe condition and should not be expected to discover defects unusual in a properly prepared business premises. The alleged defect does not arise from a natural condition of the lands. It is true that if the defective or dangerous condition is obvious so that any reasonably prudent person would be expected to see it and appreciate its dangers, the occupier of the land would not be negligent in failing to warn said person of said defect or danger. But it does not appear from the allegations of the complaint that these wires were so located that any reasonable person backing a truck through the alley-way would be reasonably expected to see them, or if he saw them to assume that they were highly dangerous.

The complaint alleges that this alleyway was "only wide enough" to permit the truck to go through it; that it was

lined with buildings on both sides for a distance of 140 feet and that it was necessary for the deceased to back the truck through this alleyway in order to unload the salt at the designated place. It also appears that these wires were above eye level—that is, that they were approximately eleven feet from the ground. Under these circumstances we are not prepared to hold that the defendant had no duty to warn the deceased of the presence of these wires and of their high voltage or that the deceased could be held as a matter of law to be guilty of contributory negligence.

It likewise cannot be said that the defendant was free from negligence in permitting this dangerous condition to exist as distinguished from the mere failure to warn. This approach was prepared for the very purpose for which the deceased was using it. He had the right to expect the defendant to inspect it and to prepare it for his coming. One cannot with prudence maintain a highly dangerous condition on a portion of the premises which business invitees are expected to use and travel. It is dangerous and negligent to maintain a high voltage wire across an approach at such a low level that persons reasonably expected to travel there as business invitees will come in contact with it. This would be dangerous even though it was obvious and even though a reasonably prudent person would be expected to see it. Of course, in nearly every case where the occupier of the land warned the invitee of the presence of the danger, he could escape liability for any ensuing injury happening to the invitee thereafter. Anyone knowing of the existence of the danger and proceeding anyway might under certain conditions be guilty of contributory negligence. And in certain cases the defendant, occupier of land, might be held to have fully performed his duty by warning the invitee of the dangerous condition. But the mere fact that these wires may have been so located that the deceased should have seen them would not disclose that the defendant was free from all negligence in maintaining the wires across this approach. It would merely show contributory negligence on the part of the deceased. It would thus be a question

of negligence and contributory negligence and as already noted this complaint does not show contributory negligence as a matter of law. It at least makes a jury question. The complaint is not defective in this regard.

It thus appears that the court erred in holding that this complaint failed to state a cause of action, but it also appears that the trial court should have held that the complaint was defective in that it appears therefrom that the cause of action stated is barred by the statute of limitations. Since the plaintiffs urge that they can amend to cure this defect and since the trial court turned the case on another point, we are of the opinion that the plaintiffs should have an opportunity to amend their complaint in this respect.

The matter is remanded with instructions to permit an amendment, if the facts are such that an amendment to cure this defect can be made. Each party to bear his own costs.

WADE and TURNER, JJ., concur.

LARSON, Justice.

I dissent. My views are set forth in my opinion in *Johanson* v. *Cudahy Packing Company,* 100 Utah 399, 115 P. 2d 794.

McDONOUGH, Justice (dissenting).

Preliminary to setting forth my reasons for disagreeing with the decision of the court, let it be said that the result reached in the prevailing opinion accords with my views of what the law in the premises should be. From the standpoint of a legislator I can see no good reason why a third party wrongdoer should be able to point to the fact that a person injured by him was awarded compensation for the disability occasioned thereby, as a reason, *under any set of circumstances,* why he should not respond in full *to such workman* for the damage done. The law, in my opinion, should but protect him from responding more than once. Under the statute, the construction of

which we are here called upon to make, it does that; but it also, in my opinion, results in giving control of the cause of action, where the workman elects to receive compensation, to the employer or insurance carrier. It results in the employer or insurance carrier becoming the real party in interest within the meaning of Section 104-3-1, U. C. A. 1943. The election by the employee divests him of any legal interest in the cause of action and leaves him but a conditional interest in any judgment entered in favor of the plaintiff.

The statute, Section 42-1-58, R. S. U. 1933, reads:

"When any injury for which compensation is payable under this title shall have been caused by the wrongful act of a third person, the injured employee, or in case of death his dependents, may at their option claim compensation under this title or have their action for damages against such third person; and, if compensation is claimed and awarded, the employer or insurance carrier having paid the compensation shall be subrogated to the rights of such employee or his dependents to recover against such third person; provided, if such recovery shall be in excess of the amount of the compensation awarded and paid, then such excess, less the reasonable expenses of the action, shall be paid to the employee or his dependents * * *."

Construction of this section is little aided, if at all, by any other section of Title 42, dealing with compensation, since it is the only one (except for subsection (5) of 42-1-42 defining "personal injury * * * arising out of or in the course of employment") which deals at all with a third party wrongdoer. Unless the section itself, or such section in the light of its historical background, sustains the construction given in the prevailing opinion; the meaning given it cannot look to butresses elsewhere in Title 42. The problem before us is to divine the intention of the legislature. I think its solution is not aided by summoning to our aid the provision of the Code of Civil Producure relative to the bringing of an action in the name of the real party in interest or that permitting the joinder as parties plaintiff of all persons having an interest in the subject of the

action and in obtaining the relief demanded (Sec. 104-3-12, U. C. A. 1943). We must first determine whether the plaintiff here is after his election to take compensation, a real party in interest, or one having an interest in the subject of the action and in obtaining the relief demanded. I do not say that the prevailing opinion takes a different view of the matter. I but eliminate other provisions of the Code in approaching the problem of discovering the legislative intent.

Section 42-1-58, R. S. U. 1933, quoted above, voices three ideas expressed in three independent clauses of a single sentence. All have reference to a situation where an injury for which compensation is payable is caused by the wrongful act of a third person. The first idea expressed is that the injured workman, or in case of death his dependents, have an *option* to claim compensation *or* to have their action for damages against the wrongdoer. Without more, this clearly does not mean that the dependents may have both. They have a choice of one of the two courses open to them to recoup or partially recoup the pecuniary loss. No one, of course, would contend that the legislature meant that the dependents were given an *option* to pursue either one or both of the remedial courses.

The second idea expressed in the sentence has reference to what results upon one of the alternative remedies being chosen, to wit: if compensation is claimed and awarded. In such case, "the employer or insurance carrier * * * shall be subrogated to the rights of such employee or his dependents to recover against such third person." Upon the meaning of this clause depends, to my mind, the validity of the court's reasoning. They are construed, as I read the opinion, to mean that the employer or insurance carrier "is subrogated only to the extent that it has been required to pay compensation." This is not what the words of the statute quoted hereinabove say. They say that such person shall be subrogated to the *rights* of the employee or dependents *to recover* against such third person. But the opinion adds the limitation by virtue of the use of the word "sub-

rogation" in the second clause of the sentence which constitutes the section, and in light of the third clause. The latter is a *proviso*. It is to the effect that if in the action against the wrongdoer an amount is recovered in excess of the compensation awarded and paid, such excess, *"less the reasonable expenses of the action,* shall be paid to the employee or his dependents." (Italics supplied.)

Now it must be conceded that if the meaning of the second clause of the section is correctly found by the opinion of the court, the result reached relative to dependents being real parties in interest must follow. And this is so because by reading the limitation into such clause, we leave an interest in *the cause of action* in the dependents; if, in fact, we do not leave the entire cause of action in the dependents, giving the subrogee but an interest in the resulting judgment. See insurance cases cited in the court's opinion. The result is that despite dependent's election not to sue they in effect "elect," as would any sensible person if given the right, to both sue and receive compensation.

I think such construction of the second clause untenable. In reaching its result the court errs in two particulars. It over-emphasizes the word "subrogated" and gives it too restricted a meaning; it under-emphasizes if, indeed, it does not disregard certain words in the third clause. The verb "subrogate" means "to put in the place of another; to substitute." Webster's New International Dictionary, Second Edition. It is the verb form "shall be subrogated" which is used in the statute. The clause means that the insurance carrier is put in the place of the employee or dependents as to any right of action against the wrongdoer. We are not aided in getting at the legislative intent by importing into the meaning of the vital phrase content from the doctrine of subrogation. Nor are cases dealing with statutes in which the limitation is expressed persuasive authority for reading the limitation into that here construed where it is not expressed. That the limitation should not be read into the statute is emphasized by the third clause —the proviso. It not only provides that the excess re-

covered, if any, be paid to the employee or his dependents —whereas, if such person or persons was or were parties plaintiff the judgment would be in his or their favor as well as in favor of the employer or insurance carrier and no one would be directed to pay them anything—but it also specifies that only the excess less the reasonable expenses of the action shall be so paid. This clearly indicates that someone other than those who are to receive the excess shall prosecute the action and that any judgment secured shall be in favor of such other; since if the dependents were the sole parties plaintiff they would be required to pay the costs, and if they were joint parties plaintiff they normally would pay their share thereof.

It is, then, the right to recover against the third party to which the employer or insurance carrier is subrogated and not the right to have the benefit of any judgment recovered up to the amount paid or awarded as compensation. And this is so simply because the statute says so, and we are aided in reaching the contrary by no legislative pronouncement, either express or implied. Indeed the statute of 1921, cited in the opinion of the court in connection with the discussion relative to assignability, left no room for doubt that it was the cause of action and not some part of it or a share of the recovery which had to be assigned to the employer or insurance carrier before compensation was payable. Hence, it cannot be argued that it would be unreasonable to ascribe to the legislature an intention to transfer to the employer or insurance carrier the cause of action under the present statute; and, clearly, the change in the structure of the section to its present form evidences no legislative intent to alter its meaning insofar as relates to the right or rights to which the payor of compensation succeeds.

On the former appeal, *Johanson* v. *Cudahy Packing Co.*, 100 Utah 399, 115 P. 2d 794, while there was diversity of opinion as to the assignability of the right suceeded to by the payor of compensation, this court was, it appears, unanimous as to the nature of the right. The right succeeded

to was held to be the right to recover against the wrong-doer; the cause of action ,which before exercise of the option rested in the employee or his dependents; and the whole thereof. See opinion of Mr. Justice Pratt at page 401 of 100 Utah, at page 795 of 115 P. 2d, concurred in by Mr. Justice Moffat; opinion of Mr. Justice Wolfe at page 404, of 100 Utah, at page 796 of 115 P. 2d; opinion of Mr. Justice Larson at page 405 of 100 Utah, at page 797 of 115 P. 2d; dissenting opinion of the writer at page 409 and 410 of 100 Utah, at page 799 of 115 P. 2d. And in *Baker* v. *Wycoff*, 95 Utah 199, 79 P. 2d 77, a case involving construction of the statute here considered. Chief Justice Folland, voicing the unanimous opinion of the court, stated at page 206 of 95 Utah, at page 81 of 79 P. 2d:

"Baker accepted compensation both before and after he became aware of the negligence of the physician. He must, therefore, be held to have elected to take compensation under the act. Any right of action he had passed, under the statute, to the insurance carrier, who was by law subrogated to the rights of the workman."

Cases in support are cited from other jurisdictions. True this pronouncement was made in response to the query: Has the insurance carrier the right to maintain the action? Hence whether the injured employee might be joined as a party plaintiff was not before the court. The injured employee commenced the action against the third party and the insurance carrier intervened. A demurrer to plaintiff's complaint was sustained by the trial court, evidently upon the theory that plaintiff was not a real party in interest. The insurance carrier was permitted to prosecute the action to judgment. The ruling on demurrer was not attacked by plaintiff on appeal. Hence, its correctness was not before this court. However, among the cases cited in support of the pronouncement is one from North Dakota which construes a statute which in substance is the same as ours, and in which the construction here contended for is made. *Polucha* v. *Landes*, 60 N. D. 159, 233 N. W. 264. And see *Vayda* v. *DeWitt et al.*, 261 Mich. 165, 246 N. W. 199 and *Overbuk*

v. *Nex*, 261 Mich. 156, 246 N. W. 196, wherein the North Dakota case is discussed and a statute similar to ours is construed to the same effect.

While I dissent from the opinion of the court insofar as it construes 42-1-58 in such manner to leave some control of the cause of action in the employee or dependents after the claiming of compensation, and am of the opinion that the defendant's demurrer was properly sustained, I am in accord with it in other respects. I concur in the holding that the cause of action discussed is not assignable. That it is not was the ground of my dissent on the former appeal. I likewise concur in the construction of the words "wrongful act of a third person" as used in the statute, and in the holding relative to the bar of the statute of limitations. I am in accord with the conclusion reached by the opinion to the effect that payment of the total award by the insurance carrier is not a condition precedent to suit. Under the construction given in the opinion of the second clause of the section such payment obviously is not a condition precedent. For if it be the legislative intent that the dependents may sue in their own name; the insurance carrier being subrogated, not to the right of the dependents to recover against the third party, but merely to an interest in such right; then, of course, it was not the legislative intent to delay the bringing of the action by and in the name of the real party in interest until the total award be paid by the subrogee.

Nor am I convinced that under the construction herein advanced, payment of the total of the award must be alleged and proved by the payor of compensation. If it must, an incongruous result is brought about. Under such construction of the statute, no subrogation to the cause of action takes place until total payment. Yet such cause of action exists because the statute provides that the insurance carrier "having paid the compensation shall be subrogated to the rights of such employee or his dependents to recover against such third person." But before such provision becomes operative, the employee or dependents must have

theretofore elected not to sue. The cause of action must then reside, between the date of the award and the time when payment thereof has been completed, in the one who so elected or be vagrant during such time. Because no subrogation takes place, no part or parcel of the right, no interest in the cause of action rests in the insurance carrier until total payment. But if we assert that under the statute the cause of action resides in the dependents because it has not yet been transferred by operation of law to the insurance carrier and in the same breath assert that by virtue of the exercise of their option to claim compensation they lost their right to sue the wrongdoer, we in effect state that they now possess a remedial right of which the exercise of their option heretofore deprived them. On the other hand, if we conceive of the remedial right, recognized by the law as being vested in the one or ones whose primary right has been invaded as wandering around, after the election of the dependents, in the ethereal void like a disembodied spirit seeking its permanent home, difficulties present themselves. Should the insurance carrier pay most of the award and then become financially unable to continue payments so as to preclude transfer of the cause of action to him, does the right revest, after the strange interlude, in those who elected not to exercise it, or is it merely extinguished by operation of the exercise of the option by the one and the failure to make payment of the total award by the other? And, query: Should the total compensation be ultimately paid, is the statute of limitations tolled during the interim between the exercise of the option and the vesting of the cause of action in the insurance carrier; that is, for the period during which no one could prosecute it?

By what is said above, I am not asserting that the legislature might not give an election to the one having a cause of action not to assert it and still make full payment of the award a condition to the exercise by the assignee or subrogee of the right to maintain such cause of action. But the scheme of the statute, in my opinion, is indicative of a

contrary intention. I think the words "the employer or insurance carrier having paid the compensation" are clearly susceptible of the meaning "having made payment of compensation pursuant to the award." This I think not a forced construction in light of the provisions of the statutes dealing with payment of compensation, which contemplate weekly payments over a period of time, and in view of the context. The words quoted from the section are preceded, it will be noted, by the words "if compensation is claimed and awarded." In light of such words, a reasonable meaning of the clause is that if after a claim and award of compensation, the insurance carrier pays compensation in accordance with the terms of the award he becomes vested with the right theretofore residing in the employee or dependents.