203 P.2d 633

**PHELPS DODGE CORPORATION v.
FORD et al.**

No. 5103.

Supreme Court of Arizona.

March 7, 1949.

Evans, Hull, Kitchel & Jenckes and Denison Kitchel, all of Phoenix, for petitioner.

H. S. McCluskey, of Phoenix (Robert E. Yount, of Phoenix, of counsel), for respondents.

STANFORD, Justice.

Respondent Thomas Ford filed claim on November 18, 1947, for compensation under the Arizona Occupational Disease Disability Law, and the latter part of that year the Industrial Commission issued its find-

192

ings and award granting to Ford compensation for total disability due to silicosis. On January 15, 1948, the employer, Phelps Dodge Corporation, hereinafter termed the petitioner, filed its application for rehearing protesting such findings and award. It was stipulated that the following agreed statement of facts was in effect a rehearing, and that the Industrial Commission should accept the statements as evidence in the case.

"Agreed Statement of Facts.

"1. Applicant was employed by defendant employer or its predecessors for a period of approximately 40 years, commencing in August, 1907, and ending in June, 1947. For the first 12 years of that period applicant was employed by defendant employer and its predecessors in general mining work underground.

"2. In April, 1919, applicant was told by a member of the medical staff of defendant employer to take a job on the surface because of having silicosis. From April, 1919, until June 15, 1947, applicant was employed by defendant employer as a watchman on the surface of defendant employer's mining properties in and around Bisbee, Arizona. During said period of approximately 28 years applicant's duties as a surface watchman consisted of the following:

"(a) Acting as a watchman at the surface yard gates of the Junction, Campbell, Cole, and Sacramento shafts.

"(b) Acting as attendant in the changerooms located in the surface yards of the Junction, Campbell, Cole, and Sacramento shafts.

"(c) Acting as fireman at defendant employer's heating plant located in the Phelps Dodge Mercantile Company store on the surface in Bisbee, Arizona.

"3. At no time during the period, April 1919 to June 15, 1947, was applicant employed underground."

On March 30, 1948, the Industrial Commission issued a supplemental award and an order affirming previous findings and award. Thereafter petitioner obtained from this court a writ of certiorari which brings this action before us.

Petitioner submits the following assignments of error:

"I. The Commission erred in its Finding 9 (Rec. 5) to the effect that Ford was exposed to harmful quantities of silicon dioxide dust during the entire period of his employment by Petitioner for the reason that such finding is not supported by any evidence (Proposition, infra).

"II. The Commission erred in its Finding 10 (Rec. 5) to the effect that during the ten years immediately preceding his disablement Ford was exposed to harmful quantities of silicon dioxide dust for a period of not less than 1200 shifts in Arizona for the reason that such finding is not supported by any evidence (Proposition, infra).

"III. The Commission erred in its Finding 11 (Rec. 5) to the effect that Ford was last exposed to harmful quantities of silicon dioxide dust during a period of 60 days or more while employed by Petitioner for the reason that such finding is not supported by any evidence. (Proposition, infra.) ·

"IV. The Commission erred in its Findings 12 through 14 (Rec. 5) to the effect that Thomas Ford is entitled to compensation, medical benefits, and funeral expenses for the reason that such findings are conclusions of law which are not supported by valid findings of fact based upon evidence. (Proposition, infra.)

"V. The Commission erred in making the award of compensation, medical benefits, and funeral expenses (Rec. 5) for the reason that such award is not supported by valid findings of fact based upon evidence. (Proposition, infra).

"VI. The Commission erred in its Finding 2 of the 'Order Affirming Previous Findings and Award' (Rec. 11) to the effect that Ford suffered an occupational disease under the provisions of the Arizona Occupational Disease Disability Law and is entitled to compensation for the reason that such finding is a conclusion of law which is not supported by valid findings of fact based on the evidence."

Our legislature in 1943, chapter 26, enacted the Arizona Occupational Disease Disability Law. Sections of the law presently necessary to aid in determining liability in this case are:

"56-1213. Employer liability for compensation.—(a) There is imposed upon every employer a liability for the payment of compensation to every employee who shall not have rejected the provisions of this act as herein provided and who becomes totally disabled by reason of an occupational disease arising out of his employment, subject to the following conditions:

"1. No compensation shall be paid when the last day of injurious exposure of the employee to the hazards of said occupational diseases shall have occurred prior to the passage of this act.

"2. * * *

"3. No compensation shall be paid in case of silicosis or asbestosis unless during the ten (10) years immediately preceding the disablement the injured employee shall have been exposed to harmful quantities of silicon dioxide ($SiO_2$) dust or asbestos dust for a total period of not less than one thousand two hundred (1,200) work shifts in employment in this state and unless total disability results within two (2) years from the last day upon which the employee actually worked for the employer against whom the compensation is claimed.

\* &ast; \* \* \* \*

"(c) Proof of the exposure to silicon dioxide ($SiO_2$) dust or asbestos dust for a total period of not less than one thousand two hundred (1,200) shifts in employment in this state, with proof of total disability from silicosis or asbestosis, shall be prima facie evidence of exposure to harmful

quantities of such dust during all of said period."

"56-1214. Last employer liable–Exception.—Where compensation is payable for an occupational disease the only employer liable shall be the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, provided that in the case of silicosis or asbestosis the only employer liable shall be the employer in whose employment the employee was last exposed to harmful quantities of silicon dioxide ($SiO_2$) dust during a period of sixty (60) days or more."

"56-1235. Occupational diseases–Proximate causation.—The occupational diseases hereinafter defined shall be deemed to arise out of the employment, only if there is a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease need not have been foreseen or expected but after it contraction must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a natural consequence."

In order for claimant Ford to prevail he must establish by competent evidence: (1) That as an incident of his employment he was exposed to harmful quantities of silicon dioxide dust during the ten years immediately preceding his disablement for a total period of not less than 1200 work shifts in employment in this state; (2) That said exposure was harmful to him; (3) That such total disability occurred within two years from the last day the claimant worked for the employer against whom compensation is claimed; (4) that he was exposed to such harmful quantities of silicon dioxide dust for a period of at least 60 days while in said employment; (5) That such total disablement was proximately caused by exposure to which others would not have been equally exposed outside of the employment in which he was engaged; (6) That he was exposed to such silicon dioxide dust at least one day subsequent to the effective date of the occupational disease law, July 1, 1943. All of the material facts necessary to entitle claimant to an award in this case have been admitted by petitioner except that petitioner denies that there is sufficient competent evidence in the record to establish the fact that claimant had been exposed to harmful quantities of silicon dioxide dust since the effective date of the occupational disease law, i. e., since July 1, 1943.

On March 6, 1943, there became effective chapter 25, Session Laws of 1943, relating to the ventilation of mines and the prevention of hazardous dust conditions therein. Section 1 thereof reads:

"Section 1. Definition of Terms. As used herein 'a hazardous dust condition' shall be deemed to exist where the breathing zone of an employee while engaged in the performance of his work contains in excess of ten million particles of air borne dust, between one micron and five microns in largest dimension, per cubic foot of air; provided, that if the free silica or asbestos content of such air borne dust does not exceed ten percent, a dust hazard shall not be deemed to exist unless such particles exceed one hundred million per cubic foot of air. Dust counts shall be determined in accordance with the United States Public Health service technique, as described in Report No. 1528, from the Public Health Reports, Vol. 47, No. 12, March 18, 1932, entitled 'The Impinger Dust Sampling Apparatus', or the equivalent of such technique. For the purpose of determining the existence of a hazardous dust condition the impinger shall be operated continuously for a period of not less than thirty minutes or for three periods of not less than ten minutes each during the course of an hour. 'Dust prevention practices' shall include ventilation, suction or exhaust methods of removing dust, wet methods for settling dust, and the use of respirators when the condition or exposure is temporary or intermittent, and such other means of removing or settling dust from mine air as shall be approved by the state mine dust engineer. 'Respirators' shall mean only those respirators approved by the United States Bureau of Mines or which may be approved hereafter by the United States Bureau of Mines and by the State Mine dust engineer. 'Mine operator' shall mean the person, association, or corporation in immediate possession of a mine as owner, operator or lessee thereof, and as such responsible for the management and condition thereof. 'Mine' shall mean shafts, tunnels, entries, winzes, raises, stopes, and other underground working places."

It is the contention of the petitioner that chapter 25, supra, is both the "yardstick and the method of proof to be employed where claimant, under the Occupational Disease Disability Law is required, in the absence of statutory presumption, to prove exposure to harmful quantities of silicon dioxide dust." It is also its claim that "he must show a percentage of free silica and the number and size of dust particles in excess of the minimum standards set by law."

It will be observed that in enacting chapter 25, supra, the legislature repealed section 218 of chapter 65, under the title "Mines and Mining" and substituted chapter 25 in lieu of section 218, thereof.

It is the view of the court therefore that chapter 25, supra, was designed to serve as a health measure by reducing the hazards of silicon dioxide or asbestos dust

in mines and that it was not intended to establish a rule of evidence in silicosis cases. Certainly if the evidence in such a case discloses a quantity of silicon dioxide dust per cubic foot to be present either in a mine or on the surface which the above statute declares to be hazardous, such proof would be ample to establish claimant's right to an award if other requirements were met, but such law does not impose upon a claimant the burden of establishing that fact, by any particular type of scientific evidence, nor does such law purport to provide an exclusive yardstick by which the presence of silicon dioxide dust in harmful quantities may be ascertained. There must, however, be some competent evidence of the presence of silicon dioxide dust in harmful quantities before an award may be justified.

We are unable to find in the records any competent evidence to support respondent's findings in this particular.

 Counsel for respondent claims that it has the authority under the law to take judicial notice of the presence of silicon dioxide dust in the Bisbee area where claimant worked without the necessity of evidence in support thereof. As authority for that contention he cites section 56-1248, A.C.A.1939, which reads as follows:

"Latitude of commission in procedure.— The Commission shall not be bound by the rules of evidence, or by any technical or formal rules of procedure, other than as herein provided; but may make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out the spirit of this act."

There is no question but that section 56-1248, supra, does vest respondent with the freedom to pursue whatever course its judgment dictates in gathering its facts so long as it has any basis whatever in logic and it may ground its decision in large measure upon hearsay. But respondent can gather no solace from the above statute in support of its contention that it may predicate its awards upon those more or less ephemeral matters which it argues to the court lie within the field of judicial notice. The statute, 56-1248, supra, relied upon does not, even by inference, give to respondent any liberty to resort to judicial notice as a means of establishing a material fact that is not under the law available to the courts. In order for any tribunal, whether it be judicial or quasi judicial, to take judicial notice of any fact, it must be so notoriously true as not to be subject to reasonable dispute or must be capable of immediate accurate demonstration. (57 Harvard Law Review 273) A high degree of probability of the truth of a particular proposition cannot justify a tribunal in taking judicial notice of its truth. (57 Harvard Law Review 274) A fact of which a court may take judicial notice must be indisputable. This being true it follows that evidence may not be received to dispute it.

There is nothing in the records to indicate that there was present in the area where claimant worked for the past twenty-eight years silicon dioxide dust in harmful quantities or that his exposure thereto (if it existed) was such that others would not have been equally exposed outside such employment especially when working as a watchman at the yard gates. We might infer, perhaps, that there may have been more dust in the changeroom or in the heating plant than outside in the open air, but not necessarily any more than may have been present in any business building frequented by miners in close proximity to the changeroom. But such inference would not include a finding that it existed in harmful quantities.

■ That respondent has had other cases coming before it involving workmen for petitioner in the Bisbee area where findings and awards have been made, even under similar circumstances, does not even tend to establish as an indisputable fact that silicon dioxide dust existed in harmful quantities in that area so as to enable respondent to take judicial notice of such fact. Many factors may have been present in those cases which are not present here. One or all of said claimants may have contracted silicosis elsewhere than in the Bisbee mines. Even if the circumstances were identical with the circumstances in the present case, the established facts could not be judicially noticed to establish the same thing as a fact in this case. To do so would result in extending the doctrine of res judicata, so that a fact once found to exist by a tribunal would thereafter be binding upon the world. It is true this court or respondent may take judicial notice of its own decisions or of the facts therein determined, Stewart v. Phœnix Nat. Bank, 49 Ariz. 34, 64 P.2d 101, but its binding effect must of necessity be limited to the parties litigants in that case.

Industrial Commission may judicially notice its former decision in the same case. Benton v. Industrial Accident Comm. of Calif., 74 Cal.App. 411, 240 P. 1021.

Court will take judicial notice of facts which it has acquired at a prior hearing of the same cause. State v. Richardson, 48 Or. 309, 85 P. 225, 8 L.R.A.,N.S., 362.

The court cannot take judicial notice of records in another and different case. Robison v. Kelly, 69 Utah 376, 255 P. 430. Sewell v. Price, 164 Cal. 265, 128 P. 407.

Rule that court takes judicial notice of their records is limited to proceedings in the same cases. Brown v. Brown, 83 Cal. App. 74, 256 P. 595.

Court cannot in one case take judicial notice of records in different though connected cases. Giannopulos v. Chachas, 50 Nev. 269, 257 P. 618.

■ We therefore hold that there is no competent evidence in the record in this case to establish the presence of silicon dioxide dust in harmful quantities in the area where claimant worked subsequent to the effective date of the Occupational Disease Disability Law of the state.

We further hold that the Industrial Commission is limited to the same extent as courts of record in judicially noticing facts to establish proof required in any given case. It may only take judicial notice of indisputable facts. Respondent cannot take judicial notice of former cases handled by it arising in the same area as evidence in support of a fact in a different case.

Award set aside.

LaPRADE, C. J., and UDALL, PHELPS, and DeCONCINI, JJ., concur.