445 P.2d 557

Richard A. SPETTIGUE, by his Guardian Virginia M. Spettigue and Robert L. Spettigue, Petitioners,

v.

T. J. MAHONEY, Judge of the Superior Court, in and for the County of Pinal, the Arizona Highway Commission and the State of Arizona, Respondents.

No. 2 CA–CIV 569.

Court of Appeals of Arizona.

Oct. 8, 1968.

Rehearing Denied Nov. 6, 1968.

Review Denied Dec. 17, 1968.

Fennemore, Craig, vonAmmon, McClennen & Udall, by Silas H. Shultz, Phoenix, for petitioners.

Gary K. Nelson, The Atty. Gen., Darrell F. Smith, Former Atty. Gen., Peter C. Gulatto, James R. Redpath, Asst. Attys. Gen., Phoenix, for respondents.

MOLLOY, Judge.

This is a review by certiorari of an order entered in a personal injury action denying the plaintiffs' motion for a pre-trial determination[1] that the defendant, State of Arizona, is liable to the plaintiffs under the doctrine of res judicata for injuries received because of negligence allegedly committed by the defendant in the construction and maintenance of a bridge on a public highway.

The plaintiffs' injuries arise out of the same two-car accident which was the subject of previous litigation which resulted in a judgment for the plaintiffs and against the State of Arizona, and which litigation was the subject of an opinion of this court, State v. Watson, 7 Ariz.App. 81, 436 P.2d 175 (1967), review denied March 5, 1968. Though the plaintiffs were not parties to this previous litigation, they contend they are entitled to the benefit of the adjudication of negligence and proximate causation rendered in this previous action.

The trial court denied the motion for partial summary judgment, thus mandating that a trial be held on the issue of liability as well as damages. The issue of liability promises to engross a busy court for many days and if the trial court was in error in denying the motion, both the parties and the State will be put to consider-

---

1. Procedurally, the matter was presented to the trial court by motion for partial summary judgment on the question of liability. That this is a permissible use of the summary judgment procedure pro- vided by Rule 56, R.Civ.P., 16 A.R.S., see, United States v. United Air Lines, Inc., 216 F.Supp. 709 (1962) and cases cited therein at 718.

able expense and effort needlessly. Under these circumstances, we can see that review by special writ is appropriate. Genda v. Superior Court, County of Pima, 103 Ariz. 240, 439 P.2d 811 (1968); and see, Caruso v. Superior Court, 100 Ariz. 167, 412 P.2d 463 (1966).

■ We are convinced from the examination of the records, both in this action and in the previous civil action,[2] that the contentions of liability here are the same as those presented in the previous litigation and that, hence, if this action be tried on the issue of liability, there will be a great overlap between the evidence in the two actions. The plaintiff Robert L. Spettigue, a minor, is a passenger in the very same automobile in which the plaintiffs in the other action were either passengers or the driver. The previous action was, as we have noted, contested in all of its phases insofar as liability is concerned, and the final judgment, affirmed after appellate procedures had been exhausted, determined the issue of liability and proximate cause adversely to the State of Arizona. There is no problem of contributory negligence to complicate the picture.[3]

The petitioners' claim for relief is based upon the so-called *Bernhard* doctrine enunciated in Bernhard v. Bank of America National Trust & Sav. Ass'n, 19 Cal.2d 807, 122 P.2d 892 (1942), which challenges the traditional concept that there must be mutuality of estoppel before the doctrine of res judicata becomes controlling. Here, it is clear that the plaintiffs would not have been bound by a judgment in the prior action if it had been favorable to the state; nevertheless, the contention is advanced that the prior judgment establishes their right to recovery. Broad language in the *Bernhard* decision supports this contention:

"In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? was there a final judgment on the merits? Was the party *against whom* the plea is asserted a party or in privity with a party to the prior adjudication?" 122 P.2d at 895. (Emphasis supplied.)

A number of recent decisions apply this doctrine to situations analogous to that presented here: DeWitt, Inc. v. Hall, 19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195 (1967); United States v. United Air-Lines, Inc., 216 F.Supp. 709 (D.Nev.1962), aff'd and opinion adopted in United Air-Lines, Inc. v. Wiener, 335 F.2d 379, 404 (1964), cert. dismissed, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964); State of Maryland v. Capital Airlines, Inc., 267 F. Supp. 298 (D.Md.1967); and Zdanok v. Glidden Co., 327 F.2d 944 (2d Cir.1964).

■ The state of the law in our own jurisdiction is less than clear. Our Supreme Court has said on a number of occasions that when the law is not settled upon a particular subject, the law of the Restatement will be looked to with favor. In the particular situation before us now, the Restatement of Judgments denies estoppel:

"Except as stated in §§ 94–111, a person who is not a party or privy to a party to an action in which a valid judgment other than a judgment in rem is rendered

\*　　\*　　\*　　\*　　\*　　\*

---

2. Records from both actions were brought before this court by writ of certiorari.

3. In this state, a jury may award the plaintiff full recovery though it finds the plaintiff guilty of contributory negligence. Layton v. Rocha, 90 Ariz. 369, 368 P.2d 444 (1962). No standard is given by the court to the jury as to when it should grant recovery despite plaintiff's negligence. Thus, under our law, a jury may very well be influenced by the identity and character of the particular defendant in allowing recovery. The ambivalence necessarily imparted to a jury verdict under the Layton doctrine was called to the attention of the court in Di Orio v. City of Scottsdale, 2 Ariz.App. 329, 332, 408 P.2d 849, 852 (1965), as an argument against holding the prior adjudication a bar to the subsequent action, and the argument was rejected. *Di Orio* will be discussed, infra, in this opinion.

(b) is not bound by or entitled to claim the benefits of an adjudication upon any matter decided in the action." Restatement of Judgments § 93, at 459–460.

None of the sections of the Restatement stating exceptions to the requirement of mutuality (§ 94–111) are applicable to the present situation. That the Restatement view is still probably the majority law in this country is indicated by 30A Am.Jur. Judgments § 392, at 440–441; 50 C.J.S. Judgments § 765, at 293–294; 1B Moore's Federal Practice § 0.412, at 1803–1812; Annots., 133 A.L.R. 181, at 185, and 23 A.L. R.2d 710, at 717.

In addition to its inclination to follow the Restatement, however, our Supreme Court has also demonstrated a propensity to be at the forefront of judicial reform and therefore any attempt to prognosticate its reaction to the problem at hand must give serious consideration to the *Bernhard* doctrine, which has been hailed by one well-respected commentator as " * * * a shining landmark of progress in justice and law administration." Currie, Civil Procedure: The Tempest Brews, 53 Cal.L.Rev. 25, 37 (1965).

This court, Division One thereof, appears to have adopted the *Bernhard* view in Di Orio v. City of Scottsdale, 2 Ariz.App. 329, 408 P.2d 849 (1965). In this case, Di Orio had previously been sued by a City of Scottsdale motorcycle patrolman for injuries received in an automobile-motorcycle accident. Di Orio counterclaimed against the patrolman in that action, but later dismissed his counterclaim. The case resulted in a judgment for the plaintiff-

patrolman against Di Orio. Subsequently, Di Orio sued the City of Scottsdale for injuries received in this accident, contending that the patrolman was an employee of the city at the time and that the city should respond in damages under the *respondeat superior* doctrine. In holding that the prior judgment acted as a collateral estoppel against Di Orio's claim, this court cited Lustik v. Rankila, 269 Minn. 515, 131 N.W. 2d 741 (1964), and quoted at length from this opinion, including in the quotation the following:

" 'We squarely held that estoppel by prior verdict was available in favor not only of a party who appeared in a different capacity but also of one who was a complete stranger to the prior litigation.' " 2 Ariz.App. 329, 332, 408 P.2d 849, 852, from 131 N.W.2d 744.

There was no need for the *Bernhard* doctrine to arrive at *Di Orio's* result. Two exceptions to the mutuality requirement delineated in the Restatement of Judgments are pertinent. The first pertains to successive actions against alleged tort-feasors where there is a duty to indemnify (a negligent servant ordinarily has the duty of indemnifying his employer),[4] and the second has to do with the situation where the liability of a person is based solely upon the act of another.[5]

Despite its deviation in reasoning from the Restatement, we would consider ourselves bound by *Di Orio* were it not for decisions of our Supreme Court which are discordant with its pronouncements. We refer to Fox v. Weissbach, 76 Ariz. 91, 259 P.2d 258 (1953); Phelps Dodge Corp. v. Ford, 68 Ariz. 190, 203 P.2d 633 (1949);

---

4. This exception is stated in § 96 of the Restatement of Judgments, and Illustration 1 of this section reads as follows: 'A, who is B's servant, injures C. C brings an action against A. Judgment is given for A on the ground that A was not at fault. This judgment bars a subsequent action against B based wholly upon A's negligence." Restatement of Judgments § 96, Illustration 1, at 477–478.

5. "A valid judgment on the merits and not based on a personal defense, in favor of a person charged with the commission of a tort or a breach of contract, bars a subsequent action by the plaintiff against another responsible for the conduct of such person if the action is based solely upon the existence of a tort or breach of contract by such person, whether or not the other person has a right of indemnity." Restatement of Judgments § 99, at 493.

Magma Copper Co. v. Naglich, 60 Ariz. 43, 131 P.2d 357 (1942).

In *Weissbach*, our Supreme Court reached the decision that an adjudication in a divorce case that a certain motor vehicle was community property could not be taken advantage of by a stranger to that litigation in a subsequent proceeding in which the stranger sought to subject the automobile to a community debt. In so holding, the Court said, in part:

"We point out, however, that the instant proceeding is between different parties and the question of whether the Buick automobile was the appellant's separate property was only incidentally in the divorce action." 76 Ariz., at 94, 259 P.2d, at 260.

In *Naglich*, our Court held that it was error for the Industrial Commission to admit in evidence an award made in favor of an injured workman during his life, in a subsequent proceeding brought against his employer by his widow for death benefits. The Court said:

"We hold, therefore, that while findings and awards unappealed from are res adjudicata against both the employer and the injured workman who were parties to the award, they are not res adjudicata when dependents are endeavoring to establish their right to death benefits. The commission, therefore, should not have permitted the findings and award on a claim for compensation to the deceased during his lifetime to be offered in evidence on a claim for death benefits to his dependents." 60 Ariz., at 51, 131 P.2d, at 360.

In the *Ford* decision, our Supreme Court refused to permit a claimant before the Industrial Commission to use against his employer, Phelps Dodge Corporation, previous findings by the Industrial Commission in other claim proceedings that there were harmful quantities of silicon dioxide dust in the area of the claimant's work. The Court's pronouncements were largely orientated to the law of judicial notice:

"Even if the circumstances were identical with the circumstances in the present case, the established facts could not be judicially noticed to establish the same thing as a fact in this case. *To do so would result in extending the doctrine of res judicata, so that a fact once found to exist by a tribunal would thereafter be binding upon the world.* It is true this court or respondent may take judicial notice of its own decisions or of the facts therein determined [citation], *but its binding effect must of necessity be limited to the parties litigants in that case.*" (Emphasis added.) 68 Ariz., at 197, 203 P.2d, at 638.

Though these decisions do not square with *Bernhard*, they do not speak conclusively because they are not orientated to the contention now made. But their cumulative effect weakens the *Di Orio* pronouncements sufficiently, particularly in view of the absence of a petition for review, so that we believe proper deference to judicial precedent permits us to seek the solution to the present problem as if the precedent slate were clear in this jurisdiction.[6]

Advocates of extending the doctrine of collateral estoppel so as to permit its use by a nonparty do so on two bases: (1) that there is no unfairness in holding a party to be bound by an adverse adjudication reached after a fully contested trial, and (2) that it is in the public interest to put an end to litigation.

In considering the fairness of conclusively binding a litigant who has lost a first battle, *Bernhard* has this to say:

"No satisfactory rationalization has been advanced for the requirement of

6. Neither is this *tabula rasa* marred by our own decision of Rail N Ranch Corporation v. State, 7 Ariz.App. 558, 441 P.2d 786 (1968), which relied upon Zdanok v. Glidden Co., 327 F.2d 944 (2d Cir. 1964). Despite its reliance on *Zdanok* (441 P.2d, at 790), *Rail N* is a law-of-the-case holding and the opinion takes pains to distinguish itself from the doctrine of res judicata.

mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend." 122 P.2d, at 895.

With some hesitation, because this court holds in veneration the acumen of the author of the *Bernhard* opinion, Chief Justice Roger J. Traynor, we suggest that this approach has turned wrong-side-out a natural burden. It is the adversary system that we have espoused in our system of justice. The adversary system prevails in many aspects of the life of man but contest rules seldom provide that one contestant must be declared the loser to a competitor that he has never met on the field of contest.

In acclaiming the *Bernhard* decision, Professor Currie has called the attention of his readers to the scornful criticism of the traditional requirement of mutuality written by Jeremy Bentham more than a century ago:

> "If the rule itself is a curious one, the reason given for it is still more so:— 'Nobody can take benefit by a verdict, who had not been prejudiced by it, had it gone contrary:' a maxim which one would suppose to have found its way from the gaming-table to the bench." Currie, Mutuality of Collateral Estoppel: Limits of the *Bernhard* Doctrine, 9 Stan. L.Rev. 281, at 284 (1957), quoting, in turn, Bentham, Rationale of Judicial Evidence, in 7 Works of Jeremy Bentham 171 (Bowring ed. 1843).

This court is not as repelled by Bentham's metaphor of the gaming-table as Justice Traynor (citation to Bentham is found in *Bernhard* at 122 P.2d, at 895) and Professor Currie appear to have been. While this court believes that our system of justice has no peer in this fallible world, nevertheless, it is unable to consider that our trial processes unerringly discover Truth. The selection of the judge and jury, the choice of counsel, the availability of witnesses, the manner of the presentation of their testimony, the dynamics of the rapport between witnesses and fact-finder, and the personalities and appearances of the parties as they impress the fact-finder in various ways, are all matters that defy scientific analysis, are affected by fortuitous circumstances and variously determine the outcome of a contest conducted in the courts of this country.

The *Bernhard* view gives conclusive effect to a first adjudication, merely because it has temporal primacy. This primacy, in turn, will usually be determined either by fortuitous events, or by the design of a party, more often the plaintiff.

The *Bernhard* approach may have an unacclaimed virtue in the minds of some. It will, if imposed early in the course of a particular litigation, prevent glaring demonstrations of the fallibility of our adversary system. For instance, Teitelbaum Furs, Inc. v. Dominion Insurance Co., 58 Cal.2d 601; 25 Cal.Rptr. 559, 375 P.2d 439 (1962), applies the *Bernhard* doctrine in a civil action for the recovery of the value of furs allegedly lost by robbery. The previous judgment, held to be a complete bar to the claim, is in a criminal action in which the president of the plaintiff corporations was convicted of conspiracy to commit grand theft and the filing of a false and fraudulent insurance claim as to the same furs. Inasmuch as the plaintiff corporations were held to be the *alter egos* of the convicted defendant, it was conceived by a unanimous Supreme Court of California that the previous conviction was res judicata of the plaintiffs' claim. But the doctrine was imposed only after a jury had found in the plaintiffs' favor in the civil action.

*Teitelbaum* thus demonstrates that in one action a jury can proclaim one fact as verity and in a subsequent action a different jury can proclaim the opposite. That the one proclamation happened to precede the other in time controls all, in the California disposition. And yet, if discovery indeed assists in "the ascertainment of facts" (quoting Justice Traynor in People v. Riser,

47 Cal.2d 566, at 586, 305 P.2d 1, at 13 (1956), one can rationalize that the second trial, after a full discovery had been afforded, came closer to declaring Truth. If the *Bernhard* doctrine is imposed soon enough, however, as sought here, discomfiting rationalizations such as this can be avoided.

In the *Teitelbaum* situation, the *Bernhard* view can clearly lay claim to having shortened the road of litigation, whether or not the decision reached is closer to absolute justice. The righteousness of this claim of expediting justice, however, is readily apparent only in the situation where the doctrine is used as a bar to the second pressing of the same claim. When the doctrine is sought to be applied offensively, as here, to establish a right to recovery in favor of a person not a party to a previous action, there are ramifications which cause one to ponder whether the ultimate mileage of litigation will be shortened or lengthened.

Under rules of practice prevalent in most jurisdictions, including our own, plaintiffs exercise almost complete dominion over claims prior to their being filed with a court. Almost always the plaintiff has control over the time and place of the instigation of his claim and, even on filing, there is no requirement similar to that imposed on defendants under the compulsory counterclaim rule (Rule 13(a), R.Civ.P., 16 A.R.S.) requiring the plaintiff to join all claims arising out of the same transaction. If the *Bernhard* doctrine can be used offensively, then it is to a plaintiff's advantage, when there are several persons injured in a single accident, to use his superior powers to keep his claim out of the legal arena until there has been another plaintiff's judgment arising out of the same events.

In his first appraisal of the *Bernhard* doctrine, Professor Currie postulated a train accident in which fifty passengers were injured, and as the result of which fifty personal injury actions were filed, with the first twenty-five actions to go to trial each resulting in a defense judgment.

Then, the twenty-sixth plaintiff wins a judgment. Under the broad language of *Bernhard*, the remaining twenty-four passengers would all have a free ride to recover their full damage. Currie, Mutuality of Collateral Estoppel: Limits of the *Bernhard* Doctrine, 9 Stan.L.Rev. 281, 285 (1957). If this be the law, it would seem most natural for a plaintiff to avoid like a plague the joinder with other plaintiffs in one action to determine liability, as is now permissible and sometimes practiced with salutary effect under our Rules of Procedure. See, Rule 42, R.Civ.P., 16 A.R.S.

That this difficulty was actually experienced in California under the *Bernhard* doctrine is indicated by the decision of Nevarov v. Caldwell, 161 Cal.App.2d 762, 327 P.2d 111 (1958). In this opinion, the court noted that the broad pronouncements of *Bernhard* had resulted in the following situation:

"This action is part of a larger pattern which has developed in personal injury cases in Los Angeles County and probably elsewhere in the state. The attorney who has a difficult case or group of cases on his hands files in the municipal court an action for recovery from a single defendant for property damage or minor personal injuries in the expectation that liability will be easily and speedily established and the question of damages left as the only issue to be decided in the principal action or actions brought in the superior court because res judicata establishes defendant's liability. This strategy (quite legitimate if Bernhard * * * has universal application) is applied to multiple injuries to different people arising from the same accident." 327 P.2d, at 115.

*Nevarov* refused to permit the application of the *Bernhard* doctrine to affirmatively establish negligence in favor of a nonparty to previous litigation. Review was denied by the Supreme Court of California. As far as has come to our attention, the *Bernhard* doctrine has never been

applied to affirmatively establish liability in the state of its genesis.

*Nevarov's* unequal treatment of plaintiffs and defendants is no innovation in the law. Many of the exceptions to the mutuality doctrine contained in the Restatement of Judgments are such as to bar a claim but not to affirmatively establish liability. See, e. g., §§ 96, 97, 98, 99, 100 and 101. Currie, in his 1957 analysis of *Bernhard* prognosticated that it would not be applied to the fifty-passenger train wreck and drew an elaborate "Offensive-Defensive Distinction" (see, 9 Stan.L.Rev., at 289–322) to justify his prediction. Currie's suggestion was not a simple plaintiff-defendant dichotomy, but rather one that took in various factors of a party possessing "the initiative," i. e., a defendant filing a non-compulsory counterclaim would have the "initiative" as to his claim and might also be bound by an adverse adjudication as to nonparties.

At least two other commentators have suggested that penetrating analysis of this problem requires a distinction between the offensive versus the defensive use of prior adjudications. See, Notes: The Impacts of Defensive and Offensive Assertion of Collateral Estoppel by a Nonparty, 35 Geo. Wash.L.Rev. 1010 (1967); and Notes: Mutuality of Estoppel: McCourt v. Algiers in Context, Wis.L.Rev., at 267 et seq. (1967). Both of these editorial notes agree that the affirmative establishment of liability through the doctrine of collateral estoppel in favor of a stranger to the action is the most extreme use tolerated by the courts and that only a very few courts have seen fit to go this far.

█ It is this extreme view that we are asked to take here, and we decline to do so. We have at least as many reservations as to the fairness of the broad sweep of the *Bernhard* view when applied offensively as expressed by Currie in 1957 (but recanted by him in 1965). We are reluctant to adopt a rule which would incline a plaintiff to maneuver to advance on the calendar another plaintiff's case with more jury-appeal rather than seek consolidation with other plaintiffs to determine liability. We are concerned that rules of evidence will vary, one case unto the other, either because of the law pertaining to admissions of parties opponent, see, Jones v. Valisi, 111 Vt. 481, 18 A.2d 179 (1941), or because of statutory or judicial presumptions pertaining to particular classes of litigants. See, Lustik v. Rankila, 269 Minn. 515, 131 N.W.2d 741 (1964).

Perhaps none of the apprehensions above expressed present themselves in the record before us now and were we inclined to decide this case on the basis of whether "justice" will have been accomplished, it would be a close question as to whether the defendant here should be denied another day in court on the issue of liability. In his recantation, this is the only limitation Currie would place upon the *Bernhard* doctrine —that it not be applied "to work injustice." See, Currie, Civil Procedure: The Tempest Brews, 54 Cal.L.Rev. 25, 37 (1965). Such an approach is a temptingly simple way to solve all of the cases that might come before this court. But, in our view, this panacea is the antithesis of our system of justice, which has been the skeletal structure about which the world's finest civilization has developed. Concepts of "justice" vary from man to man and from time to time and we can conceive of no more pernicious an evil than for an appellate court to lay down law in high-sounding language but in such broad terms that its application to the particular case cannot be determined with any degree of certainty until the highest court in the particular judicial hierarchy has made its august pronouncement as to what is "justice."

The denial of the motion for partial summary judgment is affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.