In the Matter of the Application of CAMPBELL COUNTY, Wyoming, To Establish a Community College District.

CAMPBELL COUNTY,
Wyoming, Petitioner,

v.

WYOMING COMMUNITY COLLEGE COMMISSION, Respondent.

No. 86–80.

Supreme Court of Wyoming.

Jan. 27, 1987.

Thomas D. Roberts, Morgan, Brorby, Price & Roberts, Gillette, for petitioner.

A.G. McClintock, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., Mary B. Guthrie, Sr. Asst. Atty. Gen., and Donna Rice McCrea, Asst. Atty. Gen., for respondent.

Before BROWN, C.J., THOMAS, CARDINE, and MACY, JJ., and HANSCUM, District Judge.

HANSCUM, District Judge.

Campbell County, Wyoming, applied to the Community College Commission of the State of Wyoming ("Commission") seeking to form a community college district.

The Commission is entrusted by statute with the responsibility to approve or disap-

prove the formation of any new community college districts in the state. The Commission is charged with scrutinizing a variety of statutory criteria, including the financial and educational needs of the state as a whole. After hearings, the Commission issued "Findings of Fact, Conclusions of Law, Decision and Order" disapproving the application for a community college district as filed by Campbell County, Wyoming. Campbell County filed a Petition for Review in the district court. This case was subsequently certified to this Court under an Order of Certification entered by the district judge.

Acting in conformity with well-known standards of appellate review of administrative action, this Court concludes that the Commission's action resulting in the disapproval of Campbell County's application is supported by substantial evidence, is not arbitrary and is otherwise consistent with the statutory and procedural authority vested in the Commission for reviewing applications for community colleges. Accordingly, this Court affirms the Commission's action. To sum it up, it seems that unfortunate timing and attendant temporal and environmental circumstances created the legal rationale for the Commission justifiably to disapprove the formation of a community college at Gillette at this time.

Initially, on certification to this Court from the district court, we must review the decision of the Commission under the appellate standards applicable to a reviewing court of the first instance. *Mountain Fuel Supply Co. v. Public Service Commission,* 662 P.2d 878 (Wyo.1983). Those standards are well-known[1] and do not require detailed recital. Suffice it to say, this appeal involves both evidentiary sufficiency and legal compliance, requiring appellate review of the record at the administrative level and analysis of the pertinent statutory framework empowering the Commission to exercise its responsibilities.

Considering an application for a community college district, the law requires the Commission to examine four criteria:

1. the need for a community college in the proposed district;

2. the need for the community college in the state;

3. the financial ability of the proposed district to support a college; and

4. the educational soundness of the proposed community college plan. (W.S. 21–18–312, 1977, as amended).

While the law structuring and empowering the Commission changed at about the time Campbell County's application was under review, the criteria for examination did not change. Under the "new" law, the Commission was granted rule-making authority. The rules implemented and provided a procedural framework for the new law. Campbell County argues that the rules were retroactively applied to its application, which was filed prior to the effective date of the rules. This Court is unable to understand how Campbell County could be prejudiced by this alleged retroactive application of rules or law because we have reviewed both the old law and new law and find that the standards for approval under both laws are the same. Campbell County cannot complain that any prejudice could arise out of application of the same standards, whether under the old or new law or rules and regulations. We find no prejudice.

■ Campbell County also complains of procedural defects in the hearing process, i.e. early adjournment of one of the two required hearings, the one in Rawlins

**1.** *Monahan v. Board of Trustees,* 486 P.2d 235, 237 (Wyo.1971); *Employment Security Commission of Wyoming v. Young,* 713 P.2d 198 (Wyo. 1986); *Sage Club, Inc. v. Employment Security Commission,* 601 P.2d 1306, 1310 (Wyo.1979); *Mountain Fuel Supply v. Wyoming Public Service Commission,* 662 P.2d 878, 882 (Wyo.1983); *Board of Trustees of School District No. 4, Big Horn County v. Colwell,* 611 P.2d 427, 428 (Wyo.

1980); *Employment Security Commission v. Laramie Cabs, Inc.,* 700 P.2d 399, 404 (Wyo.1985); *Gulf Oil Corp. v. Wyo. Oil and Gas Conservation Commission,* 693 P.2d 227, 239 (Wyo.1985); *Board of Trustees, Laramie County School District No. 1 v. Spiegel,* 549 P.2d 1161, 1178 (Wyo. 1976); *Mountain Fuel Supply v. Public Service Commission,* 662 P.2d 878, 883 (Wyo.1983).

which was the non-petitioning county site. Though there is no statutory requirement for a public hearing, the rules so prescribe, although no detailed guidelines are offered for the conduct of the hearings. Advertisement was accomplished and notice was given. The Commission appeared, convening the hearing at the appointed time. Two persons also appeared to give testimony. After completing the offered testimony, the Commission waited another one-half hour and adjourned after posting a notice on the meeting room door that written comments would still be accepted. To do otherwise would have been an exercise of futility and a waste of time. Finally, written comments were solicited and permitted post-hearing. Campbell County has not argued that any one appeared after adjournment to give oral testimony but declined to submit written comments. Campbell County's argument has no merit whatsoever.

Turning to a detailed review of the record, the sufficiency of evidence premising the Commission's decision to disapprove the application is unquestionable. The Commission received information from three sources: information obtained by the "Commission" from state agencies; information submitted by Campbell County via a report and study entitled "Campbell County Community College: A Report to the Wyoming Community College Commission"; and, finally, from public input.

Rather than address the alleged deficiencies at the administrative level in the sequence presented by the petitioners, we have arranged them according to the four categories of information the Commission must consider. While we do find sufficient evidence to support the Commissioner's decision, we do note that it is not a model of precision. Section 16–3–110, W.S. 1977, requires that: "Findings of fact if set forth in the statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings...." This court has repeatedly emphasized that the basic findings of fact must be made on all material issues and ultimate facts. *Pan American Petroleum Corporation v. Wyoming Oil & Gas Con-*

*servation Commission,* 446 P.2d 550 (Wyo.1968); *Powell v. Board of Trustees,* 550 P.2d 1112 (Wyo.1976); *Larsen v. Oil and Gas Conservation Commission,* 569 P.2d 87 (Wyo.1977); *Foremost Life Insurance Company v. Langdon,* 633 P.2d 938 (Wyo.1981); *Mountain Fuel Supply Company v. Public Service Commission,* 662 P.2d 878 (Wyo.1983).

In spite of these requirements, the burden of proving a lack of substantial evidence is on the party appealing the agency's determination. *Western Radio, Inc. v. Two-Way Radio Services, Inc.,* 718 P.2d 15 (Wyo.1986) *Mountain Fuel Supply Company v. Public Service Commission,* 662 P.2d 878, 883 (Wyo.1983). It is a burden which Campbell County has not carried. With these preliminaries resolved, we turn to an evaluation of the various criteria the commission actually considered.

## THE NEED FOR THE COLLEGE IN THE PROPOSED DISTRICT

The Commission found that the median age in Campbell County was 25, as opposed to 46 for the state, but refused to equate a young population "with the need for a new community college district." Campbell County argues on appeal only that "The arbitrary nature of such a decision is so obvious it does not need further comment. Quite obviously, the overall age of a community should be considered with regards [sic] to the need of a community college in a specific locale."

The minutes of the Commission meeting on August 18, and 19, 1985, reflect a concern with more than age in considering need; for example, enrollment projections and alternative services were evaluated. The Commission did, however, go on to find that "Campbell County needs the services of a community college. The need for educational services may be greater than what is presently offered." The Commission further found "that a new community college will not meet the needs of many potential students who need graduate and upper division courses." The Commission found

that needs which existed could be met by other programs.

The Commission said need could be met by expanding the Sheridan College Gillette Campus program in academic transfer areas, and that strengthening the Sheridan College program would promote course continuity. Campbell County complains on appeal that the record is "totally devoid of any evidence whatsoever" of a guarantee that Sheridan College (Northern Wyoming Community College) would do so or that additional state funding would be provided. Campbell County argues that the Commission reached an ultimate fact without benefit of any basic facts to support it.

While the record does not contain an expressed guarantee that Sheridan College would provide services to Gillette at current levels in the future, the Commission staff rendered the following advice: "Sheridan College has made every attempt, within their resources and capabilities, to provide the services necessary and we have no reason to believe that this would not continue." Presumably, acting on this advice and the evidence, the Commission so found.

The Commission also found that the presence of a community college in Gillette would enhance cultural and artistic opportunities in the community but that such was not a prime consideration in the formation of a district. Campbell County contends on appeal that "... the Commission rather cavalierly dismisses any idea that enhancement of cultural and artistic opportunities are [sic] to be of a prime concern...." The Commission's rules require the proposed district to submit an educational plan, which includes "community service programs." Campbell County made such a submission and the Commission agreed that a community college would enhance cultural and artistic opportunities, thereby presumably finding the existence of a "community service program." "Community service program" is not defined nor do the rules require it be a prime concern of the Commission—it is but one of a myriad of items the Commission is to receive. Though apparently satisfied

that the "community service program" needs were satisfied by the cultural and artistic programs, the Commission is entitled to balance the prime concerns and this criteria with the other criteria to reach a conclusion. We cannot argue nor is it our role to second-guess the product derived from this balancing process. This Court cannot substitute its judgment for that of an administrative agency. *Wyoming State Department of Education v. Barber,* 649 P.2d 681 (Wyo.1982). We decline to do so here.

## NEED FOR A COLLEGE IN THE STATE

The Commission found that if Campbell County students enrolled in the new district, Sheridan College might lose four hundred twenty-one to four hundred twenty-eight students, and that students from Johnson County might also diminish. The Commission also found that Casper College expects a small decrease (thirty to thirty-five) in enrollment if a Campbell County College were established. As to Western Wyoming College, the Commission found they reported "no significant impact." Similarly, the Commission found little potential effect on enrollment at Central Wyoming College. The Commission also found the University could potentially lose 40% of freshmen from Campbell County. Campbell County argues on appeal that all of this could also happen with a continuation of the current situation, i.e. the Gillette Campus of Sheridan County. Such an argument goes to the weight, not the sufficiency of the evidence. Weight to be given the evidence is for the factfinder. *Mountain Fuel Supply v. Public Service Commission,* supra. Campbell County has not suggested these findings are unsupported by substantial evidence.

The Commission's order "decides that seven colleges are sufficient at present to serve the educational needs of the state's propulation." The county complains this ignores the need in the proposed district and thus is improper. What the county ignores is the distinction that need in the

district is different than need in the state. In this respect, the record supports the Commission's findings and conclusion that the state does not need another community college.

## FINANCIAL ABILITY OF PROPOSED DISTRICT TO SUPPORT COLLEGE

Campbell County argues with the Commission's finding of fact that "The availability of the current facility is subject to question." The Commission also found that the property on which the proposed campus is to be situated "is available through a will bequest so long as it is used for medicine or health related purposes." The Commission responds that this finding is supported in the "public records of the Campbell County Clerk and the Campbell County Commissioners minutes on or about August 16, 1984." The Commission does not refer us to the location of the minutes in the record and we have been unable to locate them. The legal instrument in the record indicates no restrictions on the property.

The written comments contain no reference to restrictions on the use of the current facility. Neither the Campbell County Community College: A Report to the Wyoming Community College Commission, nor the Campbell County Monitoring Program, 1984 Report, refer to the will. The Minutes of the Wyoming Community College Commission, August 19, 1985, Exhibit A, reflect that Goulding suggested including a finding of fact concerning the availability of current facility being subject to some question and that subsequently was included. The minutes also recite:

"The Commission discussed the use of the remodeled hospital as an ongoing location for college activity, anticipating that the entire facility of memorial hospital will be available to the Campbell County Community College in the foreseeable future. Donna McCrea noted that the current activity in that facility is ongoing only with the stipulation that health related programming be offered within it."

We, therefore, agree that the record contains insufficient evidence to support the Commission's finding that the availability of the facility currently in use is questionable. It does not, however, follow that this case must therefore be remanded. Section 21-18-220(d) and § 21-18-312(d) W.S. 1977, as amended, require the Commission to consider the need for a community college, the financial ability to support a college, the educational soundness of the plan and other matters of assistance to the Commission. All four criteria must be evaluated. The sufficiency of the evidence must be viewed on the basis of this evaluation as disclosed from the record in its entirety. Even if one of the criteria were not met, the remaining criteria, if supported by substantial evidence, could sustain the decision. Furthermore, notwithstanding the unsupported finding within the financial ability criterion, the criterion of financial inability is otherwise supported by the evidence.

The Commission found that the revenue sharing funds, previously utilized for capital improvements in the present college facility, were no longer available. Campbell County claims that not only does the record lack a factual basis for this finding, but that it is wrong. Yet the Commission took official notice of the fact that revenue sharing funds will be diminished if not cut entirely. The propriety of officially noticing this fact will be discussed later, but such was done.

Campbell County attacks as "totally without factual basis" paragraph 15(a)(1) of the Commission's findings which states: "The Commission finds that Campbell County has periods of economic growth and economic decline." Apparently Campbell County neglected to read paragraph 15(a) which shows that per capita income in Campbell County declined in 1982 and 1983 from the 1981 figures. These figures are amply supported by the record. (See Exhibit S-7, Wyoming Housing Monitoring System, attachment to cover letter.)

The Commission also found that coal production in Campbell County might be af-

fected by changes in demand or government policy. Campbell County challenges the evidence supporting this, but concedes this finding is irrelevant. Paragraph 15(b)(2) finds uncertainty in the future growth of the coal industry because coal companies are trying to cancel contracts in Sheridan County. Whether supported by substantial evidence or not, this is as irrelevant as the finding above.

Again, this Court is unwilling to second-guess the Commission's "bottom line" conclusion that the state and district cannot afford another community college at this time. This result holds despite the unsupported "sub-findings" contained within the evaluation of the particular criteria.

## SOUNDNESS OF THE PROPOSED EDUCATION PROGRAM

Campbell County argues that sufficient evidence was presented to establish the soundness of the education program offered by the proposal. Yet the minutes of the Commission's meeting graphically detail the deficiencies in the survey responses filed by Campbell County relating to this criteria. The minutes reveal:

"Following a reading of the survey the Commission returned to specific areas of concern. . . .

The Campbell County response did not answer this question [critique of current programs] to the satisfaction of the staff nor did the staff find evidence that the existing advisory committee for the Gillette Campus of Sheridan College provided input into this response. . . .

"Mr. Sundby pointed out that on page 25 of the Campbell County response, the question was asked of the petitioning district to outline program demands and projections. The response had essentially been taken out of the WYOMING COMMUNITY COLLEGE Brochure, listing each program currently available at every community college in the state."

Campbell County also complains there is no underlying basic evidence of record to support the Commission's finding that proposed transfer programs duplicate services of existing colleges and are not responsive to the specific needs of Campbell County. Again, we disagree. The report to the Commission itself illustrates the deficiencies in curriculum development:

"Initially, the anticipated transfer curriculum will be similar to that offered by other community colleges around the state. In view of the young population and industrial base, we anticipate a long-term demand for business and general industrial sciences.

"Transfer programs are courses which can be transferred and applied toward degree programs in other colleges and universities. Actual curriculum will be determined by the trustees upon formation of the district. In order to forecast curriculum for the specified twenty-year period, a major study would be required. At this time the curriculum listed will be assumed to be constant. It is understood that adjustments will be made as the actual observed demand dictates." Campbell County Community College: A Report to the Wyoming Community College Commission.

The Commission found the vocational-technical plan unclear not only in method of delivery (college or district) but also in "specific demand related analysis." Campbell County argues only that this is not substantiated by citation to specific deficiencies, not that it is not true. Again we disagree. We find that Campbell County's report is indeed non-specific. It recites:

"As in the case of transfer programs, vocational-technical programs are anticipated to follow current demand, as identified by Northern Wyoming Community College. Some courses are expected to be presented in cooperation with the Campbell County School District's vocational-technical department."

The vagaries of this proposal justifiably led the Commission to question the soundness and viability of the proposal. Accordingly, the evidence is sufficient within this criteria.

## JUDICIAL NOTICE

An incidental issue before this court is the propriety of the Commission officially noticing facts not in record. Though the parties have not cited the pertinent statutes and rules in attacking and supporting these actions, we set them out below. Section 16–3–107(r), W.S. 1977, as amended, provides:

"Findings of fact shall be based exclusively on the evidence and matters officially noticed."

Section 16–3–108(d), W.S. 1977, as amended, states:

"Notice may be taken of judicially cognizable facts. In addition notice may be taken of technical or scientific facts within the agency's specialized knowledge or information, data and material included within the agency's files. The parties shall be notified either before or during the hearing or after the hearing but before the agency decision of material facts noticed, and they shall be afforded an opportunity to contest the facts noticed."

Furthermore, Rule 201, W.R.E. provides:

"(a) Scope of rule.—This rule governs only notice of adjudicative facts.

(b) Kinds of facts.—A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(c) When discretionary.—A court may take judicial notice, whether requested or not. * * *

(e) Opportunity to be heard.—A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

(f) Time of taking notice.—Judicial notice may be taken at any stage of the proceeding. * * * *"

■ Thus, the rules allow an administrative agency to take notice of:

1. adjudicative facts generally known in the agency's territory;

2. adjudicative facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned;

3. technical or scientific facts within the agency's specialized knowledge; and

4. information, data and material in the agency's files.

■ As an initial proposition, an administrative agency possesses the same ability to take judicial notice of adjudicative facts as a Court. *Phelps Dodge Corporation v. Ford*, 68 Ariz. 190, 203 P.2d 633 (1949). Specifically, the rules, statutes, and case law permit agencies to take official notice of their administrative files. 2 Am.Jur.2d, Administrative Law, Section 385.

Campbell County identifies three items which are asserted to have been improperly noticed by the Commission: That the availability of the present facility is questionable, that revenue sharing funds will be diminished, and the contents of the minutes of the Campbell County Commissioners' meeting held on or about August 16, 1984. The Commissioners' files contained this information. Though the minutes of the Commissioners' meeting do not appear in the record on appeal, the Commission and Campbell County refer to these minutes during the course of the administrative process. Accordingly, since the minutes were contained within the agencies' files, it is not improper for the commission to notice them. Moreover, Campbell County was aware of the importance of the minutes, as reflected by the dialogue in the administrative process. Accordingly, Campbell County had the opportunity to discuss and contest the facts and was afforded an opportunity to be heard. We see no improper use of administrative notice in the proceedings.

In view of the foregoing, this court concludes that the Commission's findings and conclusions, though inarticulately expressed, do have a basis in the record.

This court concludes that there is substantial evidence to support the findings, conclusion and order, and that the decision was not characterized by abuse of discretion nor was it arbitrary or capricious. Though the expression of findings is deficient in some areas, and the financial soundness criteria is partially unsupported, the record in its entirety sufficiently demonstrates a balance of the criteria resultant in the disapproval of the college in Gillette.

It is ordered that the Commission's action is affirmed.